Sean J. O'Hara (#024749)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona  85251
Telephone: (480) 421-1001
Fax: (480) 421-1002
sjo@kflawaz.com

Attorneys for Plaintiffs Hugo Jamie, Randall Gohn,
and Robert Davis Jr.
[additional lead counsel listed on the following page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Hugo Jaime, Randall Gohn, and Robert Davis Jr., for themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>Parts Authority, LLC; Parts Authority, Inc.; Yaron Rosenthal; Northeast Logistics, Inc. d/b/a Diligent Delivery Systems; Arizona Logistics, Inc. d/b/a Diligent Delivery Systems; BBB Logistics, Inc. d/b/a Diligent Delivery Systems; Michigan Logistics, Inc. d/b/a Diligent Delivery Systems; Larry Browne; Does 1-20 d/b/a Diligent Delivery Systems, and Does 21-40,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

Jeremiah Frei-Pearson (*pro hac vice* forthcoming)
Bradley F. Silverman (*pro hac vice* forthcoming)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10605
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
bsilverman@fbfglaw.com
awhite@fbfglaw.com

Mark Potashnick (*pro hac vice* forthcoming)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

1       Plaintiffs Hugo Jaime, Randall Gohn, and Robert Davis Jr., (collectively,
2   "Plaintiffs") individually and on behalf of other similarly situated persons, state as follows
3   for their Complaint against defendants Parts Authority, LLC, Parts Authority, Inc., Yaron
4   Rosenthal, Northeast Logistics, Inc. d/b/a Diligent Delivery Systems, Arizona Logistics,
5   Inc. d/b/a Diligent Delivery Systems, BBB Logistics Inc. d/b/a Diligent Delivery Systems,
6   Michigan Logistics, Inc. d/b/a Diligent Delivery Systems, Larry Browne, Does 1-20 d/b/a
7   Diligent Delivery Systems, and Does 21-40 (collectively, "Defendants").

8                                   **PRELIMINARY STATEMENT**

9       1.     Defendants Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal
10  (collectively "Parts Authority") together own and operate a chain of approximately 150
11  automobile parts sales and distribution stores in Arizona, California, Florida, Maryland,
12  New Jersey, New York, Ohio, Georgia, Oregon, Pennsylvania, Texas, Virginia,
13  Washington, and the District of Columbia.   Parts Authority also operates numerous
14  automotive parts warehouses in various locations around the nation. It provides nationwide
15  distribution of automotive parts to its customers.

16      2.     Parts Authority's stores routinely employ auto parts delivery drivers hired
17  through staffing agencies that include defendants Northeast Logistics, Inc., Arizona
18  Logistics, Inc., BBB Logistics, Inc., Michigan Logistics, Inc., and Does 1-20; all of which
19  do business as "Diligent Delivery Systems."[1]

20      3.     Defendants Northeast Logistics, Inc., Arizona Logistics, Inc., BBB Logistics,
21  Inc., Michigan Logistics, Inc., Larry Browne, Does 1-20, and Does 21-40 are joint
22  employers of these delivery drivers.

23      4.     Those delivery drivers are employed to make "last mile" or "last leg"
24  deliveries from Parts Authority's stores and warehouses to Parts Authority's customers.
25  They pick up assigned automotive parts from a Parts Authority store or warehouse and drive
26  an assigned route to deliver the automotive parts to their destinations, specifically Parts

27

28  _____
[1] These defendants, together with defendant Larry Browne, are collectively referred to
herein as "Diligent."

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

Authority's customers.

5.    Defendants routinely misclassify those delivery drivers hired through staffing agencies as "independent contractors."

6.    Pursuant to their policies and practices, Defendants have failed to pay overtime wages to the delivery drivers misclassified as "independent contractors" in violation of all applicable minimum wage laws, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; California Labor Code § 1182.12; the Maryland Wage and Hour Law ("MWHL"), Md. Lab. & Empl. Code § 3-401 *et seq.*; the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a *et seq.*; the New York Labor Law ("NYLL"), NYLL §§ 190 *et seq.* and 650 *et seq.*, the Ohio Minimum Fair Wage Standard Act ("OMFWSA"), O.R.C. § 4111 *et seq.*; Oregon's minimum wage law ("OMWL"), Or. Rev. Stat. Ann. § 653.025 et seq.; the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 *et seq.*; the Washington Minimum Wage Act ("WMWA"), Wash. Rev. Code § 49.46 *et seq.*; the Florida Constitution, Art. X, § 24; and the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*

7.    Pursuant to their policies and practices, Defendants failed to reimburse these misclassified delivery drivers for the cost of driving their own vehicles to deliver Parts Authority's auto parts to Parts Authority's customers.  This causes the drivers' net wages to fall below, or to fall further below, the relevant federal or state minimum wage in violation of the FLSA, and materially identical state minimum wage laws. [2]  These state laws include the Arizona Employment Practices and Working Conditions Law ("AEPWCL"), A.R.S. § 23-202 *et seq.*; Cal. Labor Code § 2802 *et seq.*; Fla. Const. Art. X, § 24, the MWHL, the NJWHL, the NYLL, the OMFWSA, the OMWL, the PMWA, the WMWA, the Virginia Minimum Wage Law, Va. Code §§ 40.1-28.8, *et seq.* ("VMWL")*,* and the DCMWA.

8.    Pursuant to their policies and practices, Defendants failed to furnish delivery

---

[2] The delivery drivers' nominal wage rate minus unreimbursed vehicle expenses equals a subminimum wage.

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

drivers employed in the State of New York with accurate wage statements in violation of the NYLL.

9.      Plaintiff Jaime asserts an FLSA claim on behalf of himself and all Parts Authority's delivery drivers nationwide who have been classified as "independent contractors," who signed an arbitration agreement, and who have worked for Defendants since the date three years preceding the filing of this Complaint.

10.     Plaintiff Jaime also asserts an NYLL claim on behalf of himself and all Parts Authority's New York delivery drivers nationwide who have been classified as "independent contractors," who signed an arbitration agreement, and who have worked for Defendants since the date six years preceding the filing of this Complaint.

11.     Plaintiff Gohn asserts an AEPWCL claim on behalf of himself and all Parts Authority's delivery drivers in Arizona who have been classified as "independent contractors," who signed an arbitration agreement, and have worked for Defendants since the date three years preceding the initiation of the U.S. Department of Labor's investigation into Defendants' unlawful conduct, which led to the filing of the Complaint in the related action *Secretary of Labor v. Arizona Logistics Incorporated et al.* ("*Arizona Logistics*"), No. 16-04499 (D. Ariz. Dec. 21, 2016), plus the time span of all violations that occurred as part of a continuing course of employment conduct.[3]

12.     Plaintiff Davis asserts a NJWHL claim on behalf of himself and all Parts Authority's New Jersey delivery drivers who have been classified as "independent contractors," who have signed an arbitration agreement, and who have worked for Defendants within six years prior to the date of filing this Complaint.

13.     Plaintiffs Jaime and Davis assert a multi-state overtime claim on behalf of all Parts Authority's delivery drivers who have been classified as "independent contractors," who signed an arbitration agreement, and who have worked for Defendants in Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington, California, and the

---

[3] A.R.S. § 23-364(H) provides tolling for employees' claims during any investigation by law enforcement into an employers' violation of the AEPWCL and throughout any continuing course of violative conduct.

District of Columbia within the applicable limitations periods, as calculated from the filing of this Complaint.

14.     Plaintiffs Jaime, Gohn, and Davis assert a multi-state minimum wage claim on behalf of all parts authority's delivery drivers who have been classified as "independent contractors," who signed an arbitration agreement, and who have worked for defendants in Arizona, Florida, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington, California, Virginia, and the District of Columbia within the applicable limitations periods, as calculated from the filing of this complaint.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a claim arising under the Constitution, laws, or treaties of the United States.

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337(a) because Plaintiffs assert a claim arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

17.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) because Plaintiffs assert a claim under the FLSA and such action may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

18.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' other claims because they are so related to claims in the action that fall within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (a) the number of members of all proposed plaintiff classes in the aggregate is greater than 100, (b) a member of a class of plaintiffs is a citizen of a State different from any defendant, and (c) the matter in controversy exceeds the sum or value of $5 million,

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

exclusive of interest and costs.

20.     Defendants are all appearing before this Court in the related action of *Secretary of Labor v. Arizona Logistics Incorporated et al.* ("*Arizona Logistics*"), No. 16-04499 (D. Ariz.), therefore jurisdiction and venue are appropriate.  Venue in this District is also proper under 28 U.S.C. § 1391(b) because Defendants employed Plaintiff Gohn in this District and this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

21.     Plaintiff Jaime is a resident of New York.  From approximately 2012 through the present, Plaintiff Jaime has been employed by Defendants as a delivery driver at Parts Authority's stores located in New York, New York.

22.     Plaintiff Gohn is a resident of Arizona.  For a significant amount of time spanning approximately five years from about 2014 to 2019, Plaintiff Gohn was employed by Defendants as a delivery driver at Parts Authority's stores located in Phoenix, Arizona.

23.     Plaintiff Davis is a resident of New Jersey.  From approximately July 2016 to November 2016, Plaintiff Davis was employed by Defendants as a delivery driver at Parts Authority stores located in Bergenfield, New Jersey and Hackensack, New Jersey.

24.     Defendant Parts Authority, LLC is a Delaware limited liability company maintaining its principal place of business at 3 Dakota Drive, Suite 110, New Hyde Park, New York, 11042, which is located in Nassau County, New York.

25.     Defendant Parts Authority, Inc. is a New York corporation which also maintains its principal place of business at 3 Dakota Drive, Suite 110, New Hyde Park, New York, 11042, which is located in Nassau County, New York.

26.     On information and belief, Yaron Rosenthal is an individual who resides in Queens Village, New York.

27.     Defendants Parts Authority, LLC and Parts Authority, Inc. comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

control.

28.    Based on knowledge and information, Defendant Rosenthal ultimately owns a substantial interest in Parts Authority, LLC and Parts Authority, Inc.  During a substantial portion of the relevant time period, he has served as the Chief Executive Officer ("CEO") and principal of Parts Authority, LLC and Parts Authority, Inc.  During a substantial portion of the relevant time period, he has maintained ultimate control of the business operations of Parts Authority, LLC and Parts Authority, Inc.  The approximately 150 Parts Authority stores are advertised as a single integrated enterprise on Parts Authority's website at www.partsauthority.com.

29.    Defendants Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal constitute "joint employers" with respect to the delivery drivers as they share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees.

30.    Because the work performed by the delivery drivers simultaneously benefited Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal and/or directly or indirectly furthered their joint interests, and because defendants Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, by reason of the fact that Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal either control, are controlled by, or are under common control with one another, Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal are collectively the "joint employers" of the delivery drivers.

31.    Defendant Northeast Logistics, Inc. is a corporation organized under the laws of Texas with a principal place of business located at 9200 Derrington Road, Suites #100 & #200, Houston, Texas, 77064 and does business as "Diligent Delivery Systems."

32.    Defendant BBB Logistics, Inc. is a corporation organized under the laws of

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

Texas with a principal place of business located at 9200 Derrington Road, Suites #100 & #200, Houston, Texas, 77064 and does business as "Diligent Delivery Systems."

33.     Defendant Michigan Logistics, Inc. is a corporation organized under the laws of Texas with a principal place of business located at 9200 Derrington Road, Suites #100 & #200, Houston, Texas, 77064 and does business as "Diligent Delivery Systems."

34.     On information and belief Does 1-20 are corporations organized under the laws of Texas with a shared principal place of business located at 9200 Derrington Road, Suites #100 & #200, Houston, Texas, 77064 and each do business as "Diligent Delivery Systems."   The true names and capacities of Does 1-20, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs at this time, who therefore sue said defendants by such fictitious names.   When the true names and capacities of such Defendants are ascertained, Plaintiffs will ask leave of the Court to amend this Complaint to insert the same.

35.     Upon information and belief, defendant Larry Browne is an individual who resides in Houston, Texas. Throughout the relevant period, Defendant Browne exercised operational control over all of the Diligent Delivery Service entities, including Northeast Logistics, Inc. Arizona Logistics, Inc., BBB Logistics, Inc., Michigan Logistics, Inc., and Does 1-20; oversaw and/or implemented the wage and hour policies and practices implicated in this action; was ultimately responsible for the delivery drivers' wages and wage statements.

36.     Defendants Northeast Logistics, Inc. Arizona Logistics, Inc., BBB Logistics, Inc., Michigan Logistics, Inc., and Does 1-20, all doing business as "Diligent Delivery Systems," comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control.   Upon information and belief, defendant Browne ultimately owns a substantial interest in Northeast Logistics, Inc., Arizona Logistics, Inc., BBB Logistics, Inc., Michigan Logistics, Inc., and Does 1-20.   He has served as the Chief Executive Officer and principal of Northeast Logistics, Inc., Arizona Logistics, Inc., BBB

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

7

1   Logistics, Inc., Michigan Logistics, Inc., and Does 1-20.  He has maintained ultimate

2   control of all business operations of Northeast Logistics, Inc., Arizona Logistics, Inc., BBB

3   Logistics, Inc., Michigan Logistics, Inc., and Does 1-20.  The Diligent entities collectively

4   advertise their services as a single integrated enterprise on Diligent's website at

5   www.diligentusa.com.

6       37.   Defendants Northeast Logistics, Inc., Arizona Logistics, Inc., BBB Logistics,

7   Inc., Michigan Logistics, Inc., Larry Browne, and Does 1-20 constitute "joint employers"

8   with respect to the delivery drivers as they share authority to hire and fire delivery drivers,

9   determine rate and method of pay, administer discipline, control work schedules and other

10  terms and conditions of employment, maintain records of hours and other employment

11  records, handle payroll and insurance decisions, and supervise the employees.

12      38.   Because the work performed by the delivery drivers simultaneously benefited

13  Defendants Northeast Logistics, Inc., Arizona Logistics, Inc., BBB Logistics, Inc.,

14  Michigan Logistics, Inc., Larry Browne, and Does 1-20 and/or directly or indirectly

15  furthered their joint interests, and because Defendants Northeast Logistics, Inc., Arizona

16  Logistics, Inc., BBB Logistics, Inc., Michigan Logistics, Inc., Larry Browne, and Does 1-

17  20 are not completely disassociated with respect to the employment of the delivery drivers

18  and may be deemed to share control of the delivery drivers, either directly or indirectly, by

19  reason of the fact that Defendants Northeast Logistics, Inc., Arizona Logistics, Inc., BBB

20  Logistics, Inc., Michigan Logistics, Inc., Larry Browne, and Does 1-20 either control, are

21  controlled by, or are under common control with one another, they are collectively the "joint

22  employers" of the delivery drivers.

23      39.   Diligent and Parts Authority constitute "joint employers" with respect to the

24  delivery drivers as they share authority to hire and fire them, determine rate and method of

25  pay, administer discipline, control work schedules and other terms and conditions of

26  employment, maintain records of hours and other employment records, handle payroll and

27  insurance decisions, and supervise the employees.

28      40.   Alternatively and/or cumulatively, because the work performed by the

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

delivery drivers simultaneously benefited all Parts Authority and Diligent and/or directly or indirectly furthered their joint interests, and because Parts Authority and Diligent are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, Parts Authority and Diligent are collectively the "joint employers" of the delivery drivers.

41.     As examples of Defendants' joint control of the delivery drivers:

a.      Parts Authority and Diligent together controlled the delivery drivers' work scheduled and other terms of condition and employment;

b.      Diligent admonished drivers to maintain Parts Authority's standards and provided drivers with Parts Authority's manuals for delivery driving;

c.      Diligent, in consultation with Parts Authority, maintained work schedules for the drivers;

d.      Either Parts Authority or Diligent could send drivers home for being late;

e.      Parts Authority and Diligent controlled when delivery drivers could leave work;

f.      Parts Authority and Diligent both had the ability to terminate drivers and both did terminate drivers;

g.      Diligent's contract with Parts Authority contains a "Driver Code of Conduct" outlining rules and restrictions that Diligent and Parts Authority place on drivers;

h.      Diligent-owner Larry Browne negotiated the contract with Parts Authority, which included a new Parts Authority Driver Code of Conduct, which placed various restrictions on drivers, such as requiring drivers to be "clean" and "well groomed" and follow strict delivery procedures; and

i.      Parts Authority and Diligent controlled / denied reimbursement for

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

9

1   vehicle costs.

2                              **FACTS**

3   *Defendants' Business*

4        42.    Parts Authority is a leading distributor of automotive replacement parts, tools

5   and equipment.  Headquartered in Long Island, New York, Parts Authority it is rapidly

6   expanding, and today operates about 150 stores in several states.

7        43.    As a substantial and important part of its business, Parts Authority provides

8   delivery service of automotive parts, tools and equipment to its customers in several states.

9        44.    Parts Authority contracts with drivers directly or through a transportation and

10  logistics service provider, Diligent.

11       45.    The delivery drivers are classified as "independent contractors."

12       46.    Although classified as "independent contractors," these delivery drivers are

13  employees.

14       47.    Delivery drivers classified as "independent contractors" receive (unpaid)

15  training regarding Parts Authority's methods and requirements, how to interact with

16  customers, and how to handle issues they encounter while making deliveries.  Drivers must

17  follow Parts Authority's instructions regarding where to make deliveries, what route to take,

18  and the order of deliveries.

19       48.    Delivery drivers classified as "independent contractors" can be penalized or

20  terminated for missing scheduled shifts.

21       49.    Delivery drivers classified as "independent contractors" must also follow

22  requirements and rules imposed on them by Defendants and are subject to termination,

23  based on Defendants' discretion and/or their failure to adhere to these companies'

24  requirements (such as rules regarding timeliness in making their deliveries, their

25  appearance, their hygiene, the passengers in the car with them, their clothing or uniform,

26  their meals, their breaks (if allowed any), etc.).

27       50.    Defendants do not pay overtime wages to delivery drivers classified as

28  "independent contractors."

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

51.     Defendants require delivery drivers classified as "independent contractors" to pay for their own vehicle costs incurred in performing their deliveries such as gasoline, replacement parts and fluids, repairs, maintenance, insurance, taxes, license and registration.

52.     The delivery drivers suffer vehicle depreciation as they drive to perform their jobs for Parts Authority.

53.     When unreimbursed expenses are deducted from the delivery drivers' wages, their actual hourly wages fall below, or fall further below, the applicable minimum wage.

***Defendants' Interstate Commerce***

54.     The delivery drivers are engaged in "foreign or interstate commerce" within the scope and meaning of Section 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

55.     Parts Authority is in interstate commerce through the national distribution of automotive parts across state lines.

56.     Parts Authority's website states "Parts Authority, founded in 1972, is a leading *national distributor* of automotive replacement parts, tools/equipment and transmissions." www.https://partsauthority.com/about/ (last visited Dec. 11, 2020, emphasis added).

57.     Parts Authority's website states "[t]he Parts Authority team passionately and with integrity, *delivers* high quality name brand automotive replacement parts *throughout the country*, quickly, accurately, with strong technical and warranty backing, and fully supports the repair mechanic with significant inventory, technology and service to ensure they have the right parts, tools and training to successfully service their customer's vehicles." www.partsauthority.com/newcustomer/ (last visited Dec. 11, 2020, emphasis added).

58.     Parts Authority's website says that Parts Authority is "serving customers in the commercial channel, including installers, dealerships, fleets, and *national accounts* as well as *in the e-commerce channel*." www.partsauthority.com/ (last visited Dec. 12, 2020,

emphasis added).

59.     Parts Authority's internet home page advertises / boasts its "Fast Delivery" and its "Prompt and accurate same day 'Hot Shot' *delivery service*." www.partsauthority.com/ (emphasis added, last visited Oct. 27, 2020).

60.     Parts Authority utilizes a "hub and spoke" distribution method to deliver its automotive parts to its customers.

61.     Upon information and belief, Parts Authority sends goods across state lines to local/regional distribution centers.  From there, delivery drivers transport the goods to customers.  Import records show that Parts Authority imports car parts from foreign countries, which, upon information and belief, are the same car parts which delivery drivers deliver to the individual customers.

62.     Defendant Rosenthal has admitted that automotive parts delivery comprises an "important part" of Parts Authority's business.

63.     Defendant Rosenthal has also admitted that about 90% of Parts Authority's automotive parts are delivered to Parts Authority's customers.

64.     Defendant Rosenthal has admitted that about 60% of Parts Authority's automotive parts are delivered to Parts Authority's customers by its delivery drivers.

65.     As the final step in this network of foreign and interstate commerce, Parts Authority's delivery drivers make "last mile" or "last leg" deliveries from Parts Authority's stores and warehouses to Parts Authority's customers.  They pick up assigned automotive parts from a Parts Authority store or warehouse and drive an assigned route to deliver the automotive parts to their destinations, specifically Parts Authority's customers.

66.     Furthermore, some of Parts Authority's delivery drivers regularly drive across state lines to deliver automotive parts.  For example, drivers frequently make deliveries between New York and New Jersey.  Likewise, drivers often deliver parts between the District of Columbia and Maryland or Virginia.  These drivers engage in the textbook definition of interstate commerce**.**

67.     Parts Authority's customers include both professional installers and do-it-

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

1   yourself vehicle owners.

2   ***Defendants' Foreign Commerce***

3       68.    Parts Authority regularly engages in substantial foreign commerce, as does

4   Diligent by virtue of its supplying and supervising delivery drivers engaged in foreign and

5   interstate commerce.

6       69.    Parts Authority offers brands from around the world. On its website, Parts

7   Authority states, "Parts Authority carries the best brands in the business for domestic and

8   import vehicles.  AC Delco, Motorcraft, Denso, Bosch, KYB, Monroe, Gates, Dorman and

9   Exide *are just a few of the more than 400 suppliers from <u>around the world</u>*, that Parts

10  Authority partners with to bring our customer partners the best parts" (emphasis added).

11      70.    Parts Authority often imports automotive parts directly from foreign

12  suppliers.  According to U.S. Customs records, Parts Authority's top suppliers include

13  Qingdao Brembo Trading Co., Ltd (imports from China), Brembo S.P.A. (imports from

14  Spain), Mahle Metal Leve S/A (imports from Brazil) and Fluid System Do Brasil (imports

15  from Brazil).

16      71.    As an example, Parts Authority imported a shipment of brake liquid from Italy

17  on October 18, 2020.  Parts Authority imported brake liquid, carburetor injection tubes,

18  radiator parts, gasoline cylinder sets, conrod bearings and camshaft bushings, brake pads,

19  brake discs and other car parts from foreign countries into ports in solely California and

20  New York.  Yet these parts, upon information and belief, end up delivered by Parts

21  Authority delivery drivers such as Plaintiffs, in states outside of California and New York.

22      72.    Similarly, import records show that Parts Authority has imported Hella Pagid

23  parts from Germany to a Los Angeles port.

24      73.    Import records show Parts Authority regularly imports Mahle automotive

25  parts from Brazil into New York.

26      74.    Import records show that Parts Authority often imports Brembo automotive

27  parts from Italy and Spain into New York and California.

28      75.    Import records further show that Parts Authority imports automotive parts

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251

Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

from countries such as China, Italy, South Korea, Malaysia, Brazil, Singapore, Spain, Germany and Japan.

76.     In 2017, Parts Authority awarded Timken, a parts manufacturer with factories worldwide and based in Europe, its "Supplier of the Year" award.

77.     Parts Authority markets these products from foreign suppliers to its U.S. consumers, including imported products from Timken, Denso, Brembo, and Mahle.

78.     Parts Authority's delivery drivers perform "last mile" or "last leg" deliveries of these imported automotive parts.

79.     Diligent CEO Larry Browne admitted in a similar litigation, "Browne admits that at least some owner-operators contracting with Arizona Logistics, Inc. [d/b/a Diligent] are or were engaged in commerce and the handling of goods that move or had been moved in commerce[.]"

80.     Parts Authority's delivery drivers are a class of workers that transport automotive parts through to the conclusion of their journeys in interstate and foreign commerce.

81.     Parts Authority's automotive parts are goods that remain in the stream of foreign or interstate commerce until they are delivered by Parts Authority's delivery drivers to Parts Authority's customers.

82.     Parts Authority's automotive parts do not "come to rest," at Parts Authority's warehouses or stores, and thus the interstate transactions do not conclude at those warehouses or stores, but only conclude when Parts Authority's automotive parts are delivered by its delivery drivers to Parts Authority's customers.

83.     Mr. Rosenthal has explained that Parts Authority's delivery drivers perform the same tasks for Parts Authority as FedEx and United Parcel Service ("UPS") delivery drivers perform for Parts Authority.

84.     Parts Authority's delivery drivers are a class of workers that transport automotive parts through to the conclusion of their journeys in foreign and interstate commerce.

85.     Parts Authority's delivery drivers complete the delivery of goods that Parts Authority imports and ships across state lines and for which Parts Authority hires delivery drivers to complete the delivery; thus, Parts Authority's delivery drivers form a part of the channels of foreign and interstate commerce, and are thus engaged in foreign and interstate commerce.

86.     Upon information and belief, Parts Authority's distribution scheme is similar to the distribution scheme utilized by Amazon, except that Parts Authority's distribution is focused on automotive parts, tools and equipment.   Upon information and belief, Parts Authority imports car parts from foreign ports, accepts such shipments at the border, transports these parts to its warehouses, transports these parts from warehouses to Parts Authority stores, where drivers then transport these parts from Parts Authority warehouses or stores to individual customers.

87.     This is confirmed by import records which show that Parts Authority imports car parts from foreign companies and accepts these shipments at the United States border. These same car parts are then delivered from local Parts Authority stores to individual customers.   The drivers know and remember that they have delivered these parts which originate in foreign countries, such as Mahle and Brembo.

88.     The function of Parts Authority's delivery drivers in its distribution scheme is similar to the function of Amazon Flex's delivery drivers in Amazon's distribution scheme:   both of those sets of delivery drivers provide "last mile" or "last leg" deliveries which are part of foreign or interstate commerce.   Parts Authority's delivery drivers are delivering the car parts from the local Parts Authority warehouses and stores to the customers for the benefit of Parts Authority, which is the same entity that imported these parts in the first place to the United States.

***Defendants' Treatment of Delivery Drivers***

89.     The primary function of Parts Authority's stores is to sell automotive parts to Parts Authority's customers, whether customers purchase those parts in Parts Authority's stores or have the parts delivered.

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

90.    Each of Parts Authority's stores employs delivery drivers which Defendants have classified as "independent contractors."

91.    Parts Authority's delivery drivers share the same primary job duty of delivering automotive parts to Parts Authority's customers using their personal automobiles.

92.    Defendants have substantially controlled the delivery drivers' work activities and schedules.

93.    The delivery drivers have been economically dependent on Defendants.

94.    Defendants have scheduled the delivery drivers to work full time or longer hours, thereby precluding the delivery drivers from earning substantial income from other sources or engaging in substantial independent business activities.

95.    The delivery drivers' work assigned by Defendants has constituted an integral part of Parts Authority's automotive parts sales and delivery business and/or Defendants have assigned the delivery drivers to perform Parts Authority's core business activity of delivering automotive parts to Parts Authority's customers.

96.    The delivery drivers' work assigned by Defendants has constituted an integral part of Diligent's staffing business and/or Defendants have assigned the delivery drivers to perform Diligent's core business activity of delivering automotive parts to Parts Authority's customers.

97.    The delivery drivers do not exercise managerial skill which affects their opportunity for profit or loss.

98.    The delivery drivers do not hold meaningful opportunity for profit or loss as part of their duties performed for Defendants.

99.    Defendants have compensated the delivery drivers through daily or hourly wages such that each delivery driver earns the same amount during his or her employment period, regardless of job performance and such that each delivery driver has no opportunity to increase earnings based on entrepreneurial or business skills.

100.   The delivery drivers do not solicit additional work for themselves from Parts

Authority's customers or others.

101.   The delivery drivers have not advertised their services as automotive parts delivery drivers.

102.   The delivery drivers have not purchased or maintained inventories of automotive parts for sale or distribution to customers.

103.   The delivery drivers have not rented, leased, or purchased retail, warehousing or other commercial space to maintain inventories of automotive parts to deliver to customers.

104.   The delivery drivers have not scheduled deliveries or managed timetables for delivery of automotive parts to Parts Authority's customers.

105.   The delivery drivers have invested relatively small amounts in equipment and supplies needed to perform their duties for Defendants compared to the value of Defendants' investment in their own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.

106.   The delivery drivers' work does not encompass any special skill, and only requires ordinary ability to drive a vehicle and follow Defendants' instructions.

107.   The delivery drivers' employments have typically lasted relatively long-term, such as named Plaintiff Jaime's service lasting approximately eight years.

108.   Defendants maintain the ability to exercise meaningful control, and do exercise meaningful control, over the delivery drivers.

109.   Defendants assign the delivery drivers' work schedules.

110.   Defendants assign the beginning and ending times of the delivery drivers' shifts.

111.   Defendants require the delivery drivers to report to Parts Authority's facilities at the beginning of their scheduled shifts to obtain automotive parts for delivery and receive delivery assignments.

112.   Defendants assign or dispatch all routes to the delivery drivers.

113.   Defendants assign or dispatch all deliveries to the delivery drivers.

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

17

114.   Defendants instruct the delivery drivers how to load automotive parts into their vehicles.

115.   Defendants monitor and supervise the work of the delivery drivers.

116.   Defendants warn the delivery drivers of discipline based on their performance and/or conduct, including, but not limited to, warning some of the delivery drivers of termination.

117.   Defendants discipline some of the delivery drivers based on performance and/or conduct, including, but not limited to, terminating some of the delivery drivers.

118.   Defendants instruct the delivery drivers not to talk on the telephone while in Parts Authority's facilities.

119.   Defendants require the delivery drivers to call Parts Authority dispatchers to report their arrival at customers.

120.   Defendants require the delivery drivers to obtain signatures of Parts Authority's customers to verify deliveries of automotive parts.

121.   Defendants require the delivery drivers to ask Parts Authority's customers for returns and defective automotive parts.

122.   Defendants require the delivery drivers to use Parts Authority's business forms and systems.

***Defendants' Payment of Delivery Drivers***

123.   Defendants typically required the delivery drivers to work in excess of 40 hours per week.

124.   For most of his term of employment Defendants required Plaintiff Jaime to work from 8:00 a.m. to about 6:00 p.m., Monday through Friday and from 10:00 a.m. to about 5:00 p.m. on Saturdays, mostly without breaks.

125.   Defendants required Plaintiff Gohn to work from 8:00 a.m. to 6:00 p.m., Monday through Saturday or longer, and sometimes without breaks.

126.   Defendants required Plaintiff Davis to work from 7:30 a.m. to about 6:00 p.m. or later, Monday through Saturday or longer, and sometimes without breaks.

18

127.    Based on information and belief, Defendants have required their other delivery drivers classified as "independent contractors" to work similar hours.

128.    Defendants failed and refused to pay the delivery drivers overtime wages, equal to at least one and one-half times their regular wage rates, for work performed in excess of 40 hours per week.

129.    Defendants typically failed and refused to pay Plaintiffs and other delivery drivers classified as "independent contractors" at least the applicable federal or state minimum wage rate.  For example, for most of his term of employment, Defendants paid Mr. Jaime about $100.00 per day while he has typically worked about 57 hours per week, which equates to $10.52 per hour ($600.00 wages / 57 hours = $10.52 hourly wage rate). This is less than New York City's 2017 minimum wage rate of $11.00 per hour for large employers like Defendants, less than York City's 2018 minimum wage for large employers of $13.00 per hour, and less than New York City's 2019 and 2020 minimum wage rate of $15.00 per hour for large employers, even before subtracting unreimbursed vehicle costs.

130.    In 2016, Defendants paid Plaintiff Gohn $600.00 per week while he typically worked at least 60 hours per week, which equates to $10.00 or less per hour ($600.00 wages / 60 hours = $10.00 hourly wage rate).  That was less than Arizona's 2018 minimum wage rate of $10.50 per hour, 2019 minimum wage rate of $11.00 per hour, and 2020 minimum wage rate of $12.00 per hour, even before subtracting unreimbursed vehicle costs.

131.    Based on information and belief, Defendants have required their other delivery drivers classified as "independent contractors" to work similar hours in exchange for similar pay.

132.    Defendants failed and refused to pay the delivery drivers overtime wages, equal to at least one and one-half times their regular wage rates, for work performed in excess of 40 hours per week.

133.    Defendants typically failed and refused to pay Plaintiffs and other delivery drivers classified as "independent contractors" at least the applicable federal or state minimum wage rate.

19

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

***Defendants' Under-Reimbursement of Delivery Drivers***

134.   Defendants have required the delivery drivers to supply operable, legally-compliant and insured vehicles to deliver Parts Authority's automotive parts to customers.

135.   Delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other vehicle expenses while delivering automotive parts for the primary benefit of Defendants.

136.   Pursuant to their policy and practice, Defendants uniformly failed and refused to reimburse the delivery drivers for the vehicle costs incurred in performing their jobs for Defendants' benefit. During the longest applicable limitations period, the IRS business mileage reimbursement rate ranged between $0.535 and $0.58 per mile.

137.   These publicly available vehicle reimbursement rates represent a reasonable approximation of the average cost of operating a vehicle for use in delivering Parts Authority's automotive parts to customers.

138.   The driving conditions associated with a delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures, cause delivery drivers to experience lower gas mileage, higher maintenance costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver.  Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the wages Defendants pay to the delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

139.   Defendants fail to reasonably approximate the amount of their delivery drivers' automobile expenses to such an extent that those delivery drivers' net wages are diminished beneath the applicable federal or state minimum wage.

140.   As calculated above, Defendants have nominally paid Plaintiff Jaime about $600.00 per week or about $10.52 per hour.

141.   Furthermore, Defendants never reimbursed Plaintiff Jaime for his vehicle expenses incurred in performing his job for Parts Authority.

142.   Plaintiff Jaime typically drove approximately 700 miles per week to perform his work for Defendants.

143.   During Plaintiff Jaime's employment with Defendants, the IRS standard business mileage reimbursement rate ranged from $0.535 to $0.58 per mile.  These rates reasonably approximate the automobile expenses incurred in delivering automotive parts.

144.   Using the lowest IRS rate in effect during Plaintiff Jaime's employment with Defendants as a reasonable approximation of his automobile expenses, every mile driven on the job decreased his net wages by at least $0.535 ($0.535 - $0.00 reimbursement = $0.535 per mile under-reimbursement).

145.   Plaintiff Jaime "kicked back" to Defendants approximately $374.50 on average per week (700 average miles per week x $0.535 under-reimbursement per mile = $374.50 per week "kickback"), which equates to an hourly "kickback" of $6.57 ($374.50 weekly "kickback" / 57 hours = $6.57 per hour "kickback"), for a net subminimum net wage rate of approximately $3.95 per hour ($10.52 nominal hourly wage rate - $6.57 "kickback" per hour = $3.95 net wage rate per hour).

146.   As calculated above, Defendants have nominally paid Plaintiff Gohn about $600.00 per week or about $10.00 per hour.

147.   Defendants never reimbursed Plaintiff Gohn for his vehicle expenses incurred in performing his job for Parts Authority.

148.   Plaintiff Gohn typically drove approximately 1,200 miles per week to perform his work for Defendants.

149.   During Plaintiff Gohn's employment with Defendants, the IRS standard business mileage reimbursement rate ranged from $0.535 to $0.58 per mile.  These rates reasonably approximate the automobile expenses incurred in delivering automotive parts.

150.   Using the lowest IRS rate in effect during Plaintiff Gohn's employment with Defendants as a reasonable approximation of his automobile expenses, every mile driven on the job decreased his net wages by at least $0.535.

151.   Plaintiff Gohn "kicked back" to Defendants approximately $642.00 on

average per week (1200 average miles per week x $0.535 under-reimbursement per mile = $642.00 per week "kickback"), which equates to an hourly "kickback" of $9.72 ($642.00 weekly "kickback" / 66 hours = $9.72 per hour "kickback"), for a net subminimum net wage rate of approximately $0.28 per hour ($10.00 nominal hourly wage rate - $9.72 "kickback" per hour = $0.28 net wage rate per hour).

152.    As another example, Defendants paid Plaintiff Davis about $560.00 per week while he typically worked at least 63 hours per week, which equates to $8.89 or less per hour ($560.00 wages / 63 hours = $8.89 hourly wage rate), before subtracting unreimbursed vehicle costs.

153.    Furthermore, Defendants never reimbursed Plaintiff Davis for his vehicle expenses incurred in performing his job for Parts Authority.

154.    Plaintiff Davis typically drove approximately 400 miles per week to perform his work for Defendants.

155.    During Plaintiff Davis' employment with Defendants, the IRS standard business mileage reimbursement rate was $0.54 per mile.  That rate reasonably approximates the automobile expenses incurred in delivering automotive parts.  Using that IRS rate in effect during Plaintiff Davis' employment with Defendants as a reasonable approximation of his automobile expenses, every mile driven on the job decreased his net wages by at least $0.54.

156.    Plaintiff Davis "kicked back" to Defendants approximately $216.00 on average per week (400 average miles per week x $0.54 under-reimbursement per mile = $216.00 per week "kickback"), which equates to an hourly "kickback" of $3.43 ($216.00 weekly "kickback" / 63 hours per week = $3.43 per hour "kickback"), for a subminimum net wage rate of approximately $5.46 per hour ($8.89 nominal hourly wage rate - $3.43 "kickback" per hour = $5.46 net wage rate per hour).

157.    Based on information and belief, all of Defendants' delivery drivers classified as "independent contractors" had similar experiences to those of the named Plaintiffs.  They were subject to the same policy of failing to reimburse for vehicle costs incurred on the job,

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

incurred similar automobile expenses, completed deliveries of similar distances and at similar frequencies, and were paid similar nominal wage rates before deducting unreimbursed business expenses.

*Parts Authority's Failure to Provide Compliant Wage Statements*

158.    Pursuant to their policy and practice, Defendants failed to provide the delivery drivers employed in New York wage statements containing the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked including overtime hours worked if applicable; deductions; and net wages.

*Notice and Willfulness*

159.    Defendants' failures, including but not necessarily limited to, their failures to pay overtime wages, low wage rates and lack of vehicle reimbursements, have been a frequent complaint of at least some of Defendants' delivery drivers, yet Defendants continued to fail and refuse to pay the delivery drivers overtime wages, minimum wages or vehicle cost reimbursements.

Defendants have been on notice of the above-alleged failures as they have been repeatedly sued and subjected to arbitration claims, including in this District, for the same, or very similar, violations; but Defendants have nevertheless failed and refused to correct such violations.

160.    Defendants have been on notice of the above-alleged failures based on the public proliferation of similar claims lodged against pizza and food delivery companies since 2009; but Defendants have failed and refused to correct such violations.

161.    Defendants have maintained the information needed to detect their own violations, but Defendants have failed and refused to correct such violations.

162.    Defendants have acted without a good faith basis to believe that their

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

underpayments of wages and other violations alleged herein have been in compliance with the law in that Defendants knowingly, deliberately and/or voluntarily disregarded their obligations to pay the delivery drivers overtime, minimum wages, vehicle reimbursements and wage statements.

*Net Impact*

163.    The net impact of Defendants' policies and practices, instituted and approved by company managers, is that Defendants have acted without a good faith basis to believe that their underpayment of wages were in compliance with the law, in that Defendants (a) failed to pay the delivery drivers legally-required overtime wages, (b) failed to pay the delivery drivers legally-required minimum wages, (c) failed to reimburse the delivery drivers for automobile expenses to such an extent that Defendants reduced, or further reduced, their net wages below the applicable minimum wage rates, and (d) failed to provide delivery drivers with compliant wage statements required under New York law.

**COLLECTIVE AND CLASS ACTION ALLEGATIONS**

**FLSA Collective Actions**

164.    Plaintiff Jaime brings Counts I and II as an "opt-in" collective action on behalf of himself and similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b), comprised of all individuals who worked as delivery drivers or provided delivery driver services at Parts Authority-branded stores in the past three years in states and U.S. territories other than Arizona[4] pursuant to a contract with Diligent and for whom Defendants possess a signed independent contractor agreement.

165.    Plaintiff Jaime individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendants' practice of failing to pay employees federal overtime and minimum wages.

166.    The number and identity of other plaintiffs yet to opt-in may be ascertained

---

[4] An FLSA collective action on behalf of Defendants' misclassified Delivery Drivers in Arizona has already been brough by the U.S. Department of Labor concerning this same misclassification and underpayment scheme. *See Sec. of Labor v Ariz. Logistics, Inc.*, No. 16-4499 (D. Ariz.).

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

from Defendants' records, and potential class members may be notified of the pendency of this action via mail.

167.    Plaintiffs and all of the delivery drivers are similarly situated in that:

a.    Their work has been controlled by Defendants.

b.    They have worked as delivery drivers for Defendants delivering automotive parts to Parts Authority's customers using automobiles not owned or maintained by Defendants;

c.    Defendants misclassified all of them as "independent contractors;"

d.    They have been economically dependent on Defendants;

e.    They have not operated automotive parts delivery businesses on their own while working for Defendants;

f.    Defendants required them to work full time or more than full time, thereby precluding them from earning income from other sources or engaging in independent business activities;

g.    Their work constitutes an integral part of Parts Authority's automotive parts sales and delivery business and an integral part of Diligent's labor and staffing business;

h.    They have performed Parts Authority's core business of delivering automotive parts to Parts Authority's customers;

i.    They have not exercised managerial skill which affects their opportunity for profit or loss;

j.    They have not experienced meaningful opportunity for profit or loss as part of their duties performed for Defendants;

k.    They have been compensated through daily or hourly wages such that each delivery driver earns the same amount during his or her employment period, regardless of job performance and has no opportunity to increase earnings based on entrepreneurial or business skills;

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

l.     They have not purchased an inventory of automotive parts to distribute to customers;

m.    They have not solicited additional work from Parts Authority's customers or others;

n.     They have not advertised their services as automotive parts delivery drivers;

o.     They have not purchased, rented or leased retail, warehousing or other commercial space to maintain inventories of automotive parts to deliver to customers;

p.     They have not scheduled deliveries or managed time tables for delivery of automotive parts to Parts Authority's customers;

q.     They have invested relatively small amounts in equipment and supplies needed to perform their duties for Defendants compared to the value of Defendants' investments in their own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.;

r.     Their work does not entail any special skill, and only requires ordinary ability to drive and follow Defendants' instructions;

s.     They typically have performed work for Defendants over relatively-long and indefinite lengths of time;

t.     Defendants compensated them through similar wage rates;

u.     Defendants failed and refused to pay them federal overtime wages;

v.     Defendants failed and refused to pay them federal minimum wages;

w.    They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

x.     They incurred similar vehicle costs in performing their duties for Defendants; and

y.     Defendants failed and refused to reimburse them for vehicle costs

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

1    incurred on the job, thus reducing, or further reducing, their effective

2    wages below the legal minimum.

3    ***Arizona Class Action***

4    168.    Plaintiff Gohn brings Count III of this Complaint as a class action under Fed.

5    R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

6    All individuals who worked as delivery drivers or provided delivery driver

7    services at Parts Authority-branded stores in the State of Arizona pursuant to

8    a contract with Diligent at any time since the date three years preceding the

9    initiation of the U.S. Department of Labor's investigation into Defendants'

10    unlawful conduct, which led to the filing of the Complaint in the related action

11    *Secretary of Labor v. Arizona Logistics Incorporated et al.* ("Arizona

12    Logistics"), No. 16-04499 (D. Ariz. Dec. 21, 2016), plus the time span of all

13    violations that occurred as part of a continuing course of employment

14    conduct, and for whom Defendants possess a signed independent contractor

15    agreement (hereinafter the "Arizona Class").

16    169.    The Arizona claims, if certified for class-wide treatment, are brought on

17    behalf of all similarly situated persons who do not opt-out of the Arizona Class.

18    170.    The Arizona claims satisfy the numerosity, commonality, typicality,

19    adequacy and superiority requirements of a class action under Rule 23(a).

20    171.    The Arizona Class sought satisfies the numerosity standard because it is

21    comprised of at least hundreds of persons who are geographically dispersed. As a result,

22    joinder of all Arizona Class members in a single action is impracticable.  Arizona Class

23    members may be informed of the pendency of this class action through mail and/or email.

24    172.    Questions of fact and law common to the Arizona Class predominate over any

25    questions affecting only individual members. The questions of law and fact common to the

26    Arizona Class arising from Defendants' actions include, without limitation, the following:

27    a.    Whether Defendants misclassified Arizona Class members as

28    "independent contractors" exempt from the AEPWCL;

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

b.      Whether Defendants exercised a substantial degree of control over the Arizona Class members' work;

c.      Whether Arizona Class members performed work integral to Defendants' business operations;

d.      Whether Arizona Class members have had opportunity for profit or loss depending on managerial skill;

e.      Whether the Arizona Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.      Whether the Arizona Class members' work has required special skills and initiative;

g.      Whether the Arizona Class members' work was typically long term;

h.      Whether Defendants failed to pay Arizona Class members minimum wages in violation of the AEPWCL;

i.      Whether Defendants failed to reasonably reimburse Arizona Class members for their vehicle costs incurred in performing their duties for Defendants; and

j.      Whether Defendants failed to pay Arizona Class members net wages equal to at least the Arizona minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

173.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

174.    Plaintiff Gohn's claims are typical of those of the Arizona Class in that:

a.      Plaintiff Gohn and the Arizona Class have worked as delivery drivers for Defendants;

b.      Plaintiff Gohn and the Arizona Class have performed similar job duties for Defendants;

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

c.      Plaintiff Gohn and the Arizona Class have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.      Defendants failed to pay Plaintiff Gohn and the Arizona Class the Arizona minimum wage;

e.      Plaintiff Gohn and the Arizona Class incurred vehicle costs in performing their duties for Defendants; and

f.      Defendants failed to reimburse Plaintiff Gohn and the Arizona Class for their vehicle costs incurred in performing their duties for Defendants.

175.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Arizona Class. The presentation of separate actions by individual Arizona Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Arizona Class members to protect their interests.

176.    Plaintiff Gohn is an adequate representative of the Arizona Class because he is a member of the Arizona Class and his interests do not conflict with the interests of the members of the Arizona Class.  The interests of the Arizona Class will be fairly and adequately protected by Plaintiff Gohn and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

177.    Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Maryland Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Arizona Class members.

178.    Upon information and belief, the Arizona Class includes members that are

currently residents of other states.

### *New Jersey Class Action*

179.   Plaintiff Davis brings Counts IV and V of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All individuals who worked as delivery drivers or provided delivery driver services at Parts Authority-branded stores in the State of New Jersey pursuant to a contract with Diligent at any time since the date six years preceding the filing of the Complaint in this matter and for whom Defendants possess a signed independent contractor agreement (hereinafter the "New Jersey Class").

180.   The New Jersey claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the New Jersey Class.

181.   The New Jersey claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

182.   The New Jersey Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all New Jersey Class members in a single action is impracticable.  New Jersey Class members may be informed of the pendency of this class action through mail and/or email.

183.   Questions of fact and law common to the New Jersey Class predominate over any questions affecting only individual members. The questions of law and fact common to the New Jersey Class arising from Defendants' actions include, without limitation, the following:

> a.   Whether Defendants misclassified New Jersey Class members as "independent contractors" exempt from the NJWHL;
>
> b.   Whether Defendants exercised a substantial degree of control over the

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

New Jersey Class members' work;

c.   Whether New Jersey Class members performed work integral to Defendants' business operations;

d.   Whether New Jersey Class members have had opportunity for profit or loss depending on managerial skill;

e.   Whether the New Jersey Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.   Whether the New Jersey Class members' work has required special skills and initiative;

g.   Whether the New Jersey Class members' work was typically long term;

h.   Whether Defendants failed to pay New Jersey Class members overtime pay;

i.   Whether Defendants failed to pay New Jersey Class members minimum wages in violation of the NJWHL;

j.   Whether Defendants failed to reasonably reimburse New Jersey Class members for their vehicle costs incurred in performing their duties for Defendants;

k.   Whether Defendants failed to pay New Jersey Class members net wages equal to at least the New Jersey minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

184.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

185.   Plaintiff Davis' claims are typical of those of the New Jersey Class in that:

a.   Plaintiff Davis and the New Jersey Class have worked as delivery

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

1    drivers for Defendants;

2    b.    Plaintiff Davis and the New Jersey Class have performed similar job

3          duties for Defendants;

4    c.    Plaintiff Davis and the New Jersey Class have been subjected to the

5          same, or at least very similar, treatment and control by Defendants as

6          set forth in detail above;

7    d.    Defendants failed to pay Plaintiff Davis and the New Jersey Class

8          overtime wages required by New Jersey law;

9    e.    Defendants failed to pay Plaintiff Davis and the New Jersey Class the

10         New Jersey minimum wage;

11   f.    Plaintiff Davis and the New Jersey Class incurred vehicle costs in

12         performing their duties for Defendants; and

13   g.    Defendants failed to reimburse Plaintiff Davis and the New Jersey

14         Class for their vehicle costs incurred in performing their duties for

15         Defendants.

16       186.   A class action is the appropriate method for the fair and efficient adjudication

17  of this controversy. Defendants have acted or refused to act on grounds generally applicable

18  to the New Jersey Class. The presentation of separate actions by individual New Jersey

19  Class members creates a risk of inconsistent and varying adjudications, establishing

20  incompatible standards of conduct for Defendants, and/or substantially impairing or

21  impeding the ability of New Jersey Class members to protect their interests.

22       187.   Plaintiff Davis is an adequate representative of the New Jersey Class because

23  he is a member of the New Jersey Class and his interests do not conflict with the interests

24  of the members of the New Jersey Class.  The interests of the New Jersey Class will be

25  fairly and adequately protected by Plaintiff Davis and his counsel, who have extensive

26  experience prosecuting complex wage and hour, employment, and class action litigation.

27       188.   Maintenance of these claims as a class action is a fair and efficient method

28  for adjudicating this controversy.  It would be impracticable and undesirable for each

member of the New Jersey Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all New Jersey Class members.

189.    Upon information and belief, the New Jersey Class includes members that are currently residents of other states.

### *New York Class Action*

190.    Plaintiff Jaime brings Counts VI through VIII of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All individuals who worked as delivery drivers or provided delivery driver services at Parts Authority-branded stores in the State of New York pursuant to a contract with Diligent at any time since the date six years preceding the filing of the Complaint in this matter and for whom Defendants possess a signed independent contractor agreement (hereinafter the "New York Class").

191.    The New York claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the New York Class.

192.    The New York claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

193.    The New York Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all New York Class members in a single action is impracticable.  New York Class members may be informed of the pendency of this class action through mail and/or email.

194.    Questions of fact and law common to the New York Class predominate over any questions affecting only individual members. The questions of law and fact common to the New York Class arising from Defendants' actions include, without limitation, the following:

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

a.    Whether Defendants misclassified New York Class members as "independent contractors" exempt from the NYLL;

b.    Whether Defendants exercised a substantial degree of control over the New York Class members' work;

c.    Whether New York Class members performed work integral to Defendants' business operations;

d.    Whether New York Class members have had opportunity for profit or loss depending on managerial skill;

e.    Whether the New York Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.    Whether the New York Class members' work has required special skills and initiative;

g.    Whether the New York Class members' work was typically long term;

h.    Whether Defendants failed to pay New York Class members overtime pay;

i.    Whether Defendants failed to pay New York Class members minimum wages in violation of the NYLL;

j.    Whether Defendants failed to reasonably reimburse New York Class members for their vehicle costs incurred in performing their duties for Defendants;

k.    Whether Defendants failed to pay New York Class members net wages equal to at least the New York minimum wage after deduction of unreimbursed vehicle costs incurred on the job; and

l.    Whether Defendants provided Plaintiffs complaint wage statements.

195.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

196.    Plaintiff Jaime's claims are typical of those of the New York Class in that:

a.    Plaintiff Jaime and the New York Class have worked as delivery drivers for Defendants;

b.    Plaintiff Jaime and the New York Class have performed similar job duties for Defendants;

c.    Plaintiff Jaime and the New York Class have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.    Defendants failed to pay Plaintiff Jaime and the New York Class overtime wages required by New York law;

e.    Defendants failed to pay Plaintiff Jaime and the New York Class the New York minimum wage;

f.    Plaintiff Jaime and the New York Class incurred vehicle costs in performing their duties for Defendants;

g.    Defendants failed to reimburse Plaintiff Jaime and the New York Class for their vehicle costs incurred in performing their duties for Defendants; and

h.    Defendants failed to provide Plaintiff Jaime and the New York Class with complaint wage statements.

197.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the New York Class. The presentation of separate actions by individual New York Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of New York Class members to protect their interests.

198.    Plaintiff Jaime is an adequate representative of the New York Class because he is a member of the New York Class and his interests do not conflict with the interests of the members of the New York Class.  The interests of the New York Class will be fairly

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

and adequately protected by Plaintiff Jaime and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

199.   Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the New York Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all New York Class members.

200.   Upon information and belief, the New York Class includes members that are currently residents of other states.

***Multi-State Class Actions***

201.   Plaintiffs Jaime and Davis bring Count IX of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons who were not paid overtime wage:

> All individuals who worked as delivery drivers or provided delivery driver services at Parts Authority-branded stores in the States of California, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, and Washington,  and in the District of Columbia pursuant to a contract with Diligent at any time during the relevant statutory periods, as calculated from the filing of the Complaint in this matter, and for whom Defendants possess a signed independent contractor agreement (hereinafter the "Multi-State Overtime Class").

202.   Plaintiffs Jaime, Gohn and Davis bring Count X of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons who were not paid minimum wages:

> All individuals who worked as delivery drivers or provided delivery driver services at Parts Authority-branded stores in the States of Arizona, California, Florida, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania,

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

Virginia and Washington and the District of Columbia pursuant to a contract with Diligent at any time during the relevant statutory periods, as calculated from the filing of the Complaint in this matter, and for whom Defendants possess a signed independent contractor agreement (hereinafter the "Multi-State Minimum Wage Class;" collectively with the Multi-State Overtime Class, the "Multi-State Classes").

203.    The overtime laws of California, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington and the District of Columbia are materially identical in that they prohibit employers from paying employees less than one and one-half times the employees "regular rate" or pay for time worked in excess of 40 hours in a workweek.[5]

204.    The minimum wage laws of Arizona, California, Florida, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia, Washington and the District of Columbia are materially identical in that they require payment of at least minimum wage.[6]

205.    The multi-state claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Multi-State Classes.

206.    The multi-state claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

207.    The Multi-state Classes sought satisfy the numerosity standard because they are each comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Multi-State Class members in a single action is impracticable. Multi-State Class members may be informed of the pendency of this class action through direct mail and/or email.

---

[5] *See* Cal. Lab. Code § 510; Md. Lab. & Empl. Code §§ 3-415 & 3-420; N.J.S.A. 34:11–56a *et seq.*; NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2; Ohio Rev. Code § 4111.03, *et seq.*; Or. Rev. Stat. § 653.261; 43 P.S. § 333.104(c); Wash. Rev. Code Ann. § 49.46.130(1); D.C. Code § 32-1003(c).

[6] *See* A.R.S. § 23-363; Cal. Lab. Code § 1182.12 *et seq.*; Fla. Const. Art. X, § 24; Md. Lab. & Empl. Code §§ 3-413 & 3-401(b); N.J.S.A. § 34:11–56a4; N.J.A.C. §§ 12:56-3.1; NYLL § 652; 12 NYCRR § 142-2.1; Ohio Const. Art. II § 34a, *et seq.*; O.R.C. § 4111.02; Or. Rev. Stat. Ann. § 653.025; 43 P.S. § 333.104; Wash. Rev. Code Ann. § 49.46.020 *et seq.*; D.C. Code §§ 32-1003(a).

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

208.   Questions of fact and law common to the Multi-State Classes predominate over any questions affecting only individual members. The questions of law and fact common to the Multi-State Classes arising from Defendants' actions include, without limitation, the following:

a.   Whether Defendants misclassified Multi-State Class members as "independent contractors" exempt from minimum wage laws;

b.   Whether Defendants exercised a substantial degree of control over the Multi-State Class members' work;

c.   Whether Multi-State Class members performed work integral to Defendants' business operations;

d.   Whether Multi-State Class members have had opportunity for profit or loss depending on managerial skill;

e.   Whether the Multi-State Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.   Whether the Multi-State Class members' work has required special skills and initiative;

g.   Whether the Multi-State Class members' work was typically long term;

h.   Whether Defendants failed to pay Multi-State Class members overtime wages in violation of applicable state overtime law;

i.   Whether Defendants reasonably reimbursed Multi-State Class members for their vehicle costs incurred in performing their duties for Defendants; and

j.   Whether Defendants failed to pay Multi-State Class members net wages equal to at least the applicable state minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

209.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

210.   Plaintiffs' claims are typical of those of the Multi-State Classes in that:

a.   Plaintiffs and the Multi-State Classes have worked as delivery drivers for Defendants and have been classified as "independent contractors";

b.   Plaintiffs and the Multi-State Classes have performed similar job duties for Defendants;

c.   Plaintiffs and the Multi-State Classes have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.   Defendants failed to pay Plaintiffs and the Multi-State Overtime Class overtime wages;

e.   Defendants failed to pay Plaintiffs and the Multi-State Classes the applicable minimum wage;

f.   Plaintiffs and the Multi-State Classes incurred vehicle costs in performing their duties for Defendants; and

g.   Defendants failed to reimburse Plaintiffs and the Multi-State Classes for their vehicle costs incurred in performing their duties for Defendants.

211.   A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Multi-State Classes.  The presentation of separate actions by individual Multi-State Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Multi-State Class members to protect their interests.

212.   Plaintiffs are adequate representatives of their respective Multi-State Classes because they are members of those Multi-State Classes and their interests do not conflict with the interests of the members of the Multi-State Classes they seek to represent. The interests of the Multi-State Classes will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour,

employment, and class action litigation.

213.   Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Multi-State Classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Multi-State Class members.

**CLAIMS FOR RELIEF**

**Count I:  Violation Of The FLSA By Failing To Pay Overtime Wages**

**(On Behalf Of The Nationwide Collective Excluding Arizona)**

214.   Plaintiff Jaime reasserts and re-alleges the allegations set forth above.

215.   At all times material herein, Plaintiff Jaime, and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

216.   The FLSA regulates, among other things, the payment of overtime wages to employees who are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

217.   Defendants are subject to the overtime pay requirements of the FLSA because they constitute enterprises engaged in interstate commerce and their delivery drivers are engaged in interstate commerce.

218.   During all times relevant to this action, Defendants were jointly the "employers" of the delivery drivers within the meaning of the FLSA. 29 U.S.C. § 203(d).

219.   During all times relevant to this action, the delivery drivers were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

220.   Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. Despite Defendants' misclassification of the delivery drivers, none of the FLSA's exemptions apply to Plaintiffs

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251

Tel. 480-421-1001 | Fax. 480-421-1002

Jaime or other similarly situated delivery drivers. *Id.*

221.    Under Section 7 of the FLSA, codified at 29 U.S.C. § 207, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. *Id.*

222.    As alleged herein, Defendants violated the FLSA by failing to pay overtime wages as required by the FLSA. 29 U.S.C. § 207(a).

223.    Defendants knew or should have known that their pay policies, practices and methodology result in failure to pay delivery drivers overtime wages required under the FLSA.

224.    Plaintiff Jaime and all similarly situated delivery drivers misclassified as "independent contractors" are victims of a uniform compensation policy. On information and belief, the same unlawful compensation policy has been applied to all Defendants' delivery drivers misclassified as "independent contractors."

225.    Plaintiff Jaime and all similarly situated delivery drivers misclassified as "independent contractors" are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of the Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for whether their conduct was prohibited by the FLSA, and dissuaded employees from asserting their legal rights by misinforming employees about those rights.

226.    Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the delivery drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay permitted by 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendants are not subject to an award of liquidated damages, the delivery drivers are entitled to an award of prejudgment interest at the applicable legal rate.

227.    As a result of the aforesaid willful violations of the FLSA's overtime pay

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

provisions, overtime compensation has been unlawfully withheld by Defendants from the delivery drivers misclassified as "independent contractors." Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiff Jaime and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count II:  Violation of the FLSA'S Minimum Wage Requirement
### (On Behalf Of The Nationwide Collective Of Delivery Drivers)

228.    Plaintiff Jaime reasserts and re-alleges the allegations set forth above.

229.    At all relevant times herein, Plaintiff Jaime and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

230.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a).

231.    Defendants are subject to the minimum wage requirements of the FLSA because they constitute enterprises engaged in interstate commerce and their delivery drivers are engaged in interstate commerce.

232.    During all times relevant to this action, Defendants were jointly the "employers" of the delivery drivers within the meaning of the FLSA. 29 U.S.C. § 203(d).

233.    During all times relevant to this action, the delivery drivers were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

234.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  Despite Defendants'

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

misclassification of the delivery drivers, none of the FLSA's exemptions apply to Plaintiff Jaime or other similarly situated delivery drivers. *Id.*

235.   Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009. *Id.*

236.   As alleged herein, Defendants have failed to pay delivery drivers the federal minimum wage, even before considering unreimbursed vehicle costs incurred on the job.

237.   As alleged herein, Defendants have reimbursed their delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath, or further beneath, the federal minimum wage.

238.   Defendants, pursuant to their policy and practice, violated the FLSA by failing and refusing to pay federal minimum wage to Plaintiff Jaime and other similarly situated employees.

239.   Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

240.   Plaintiff Jaime and all similarly situated delivery drivers misclassified as "independent contractors" are victims of a uniform compensation policy. On information and belief, the same unlawful compensation policy has been applied to all Defendants' delivery drivers misclassified as "independent contractors."

241.   Plaintiff Jaime and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each delivery driver joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful, and dissuaded employees from asserting their legal rights by misinforming employees about those rights.

242.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, the delivery drivers are entitled to recover an award of liquidated damages in an amount

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants did not act in good faith and with reasonable grounds in failing to pay minimum wage and / or overtime compensation, Plaintiff Jaime and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

243.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from the delivery drivers misclassified as "independent contractors."    Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count II, Plaintiff Jaime and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count III:  Violation Of The AEPWCL By Failing
### To Pay The Arizona Minimum Wage
### (On Behalf Of The Arizona Class)

244.    Plaintiffs reassert and re-allege the allegations set forth above.

245.    At all relevant times, Plaintiff Gohn and the Arizona Class have been entitled to the rights, protections, and benefits provided under the AEPWCL, A.R.S. § 23-201 *et seq.*

246.    The AEPWCL regulates, among other things, the payment of minimum wage by "employers" to "employees."  A.R.S. § 23-363.

247.    Under the AEPWCL, employees have been entitled to be compensated at a rate of at least $10.00 per hour in 2017, $10.50 per hour in 2018, $11.00 per hour in 2019, and $12.00 per hour in 2020.   *Id.*

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

248.    Defendants are subject to the AEPWCL as they are jointly and severally an "employer" within the scope and meaning of the AEPWCL'S broad definitions.  A.R.S. § 23-362(B).

249.    Plaintiff Gohn and the Arizona Class are subject to the AEPWCL as they are "employees" within the scope and meaning of the AEPWCL broad definitions.  A.R.S. § 23-362(A).

250.    No exemption applies to Plaintiff Gohn or to the Arizona Class.

251.    Plaintiff Gohn and the Arizona Class are victims of a uniform compensation policy of compensating Arizona Class members at wage rates below the Arizona minimum wage; and that uniform policy, in violation of the AEPWCL, has been applied, and continues to be applied, to all Arizona Class members.

252.    As a result of the aforesaid violations of the AEPWCL minimum wage provisions, Defendants have unlawfully denied Plaintiff Gohn and the Arizona Class minimum wages guaranteed under the AEPWCL.

253.    Plaintiff Gohn and the Arizona Class are entitled to damages equal to the amount of the unpaid minimum wages during the three years preceding the filing of the original Complaint in this matter, plus all damages that accrued due to all violations that occurred as part of a continuing course of employer conduct regardless of their date.  A.R.S. § 23-364(H).

254.    Plaintiff Gohn and the Arizona Class are entitled to additional damages equal to two times the difference between the minimum wage and actual wages received within the three years preceding the filing of this Complaint.  A.R.S. § 23-364(G).

255.    Plaintiff Gohn and the Arizona Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.  *Id*.

256.    Defendants are also liable for Plaintiff Gohn's costs and attorney's fees incurred in this action.  *Id*.

WHEREFORE, on Count III of this Complaint, Plaintiff Gohn on behalf of himself and the Arizona Class demands an award against Defendants, and requests: (1)

compensatory damages; (2) liquidated damages, (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count IV:  Violation of the NJWHL By Failing To Pay Overtime Wages
### (On Behalf Of The New Jersey Class)

257.    Plaintiff Davis reasserts and re-alleges the allegations set forth above.

258.    At all times material herein, Plaintiff Davis and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the N.J. Stat. Ann. § 34:11-564a *et seq.*, as amended by the New Jersey Wage Theft Act (P.L. 1999 ch. 90 § 10 (C.2C:40-A-2) ("WTA")).

259.    N.J. Stat. Ann. § 34:11-56a regulates, among other things, the payment of overtime wages to employees.  N.J. Stat. Ann. § 34:11-56a4(b)(1).

260.    Defendants are subject to the New Jersey minimum wage provision as they constitute an "employer" within the scope and meaning of NJWHL broad definitions.

261.    Plaintiff Davis and the New Jersey Class are subject to the New Jersey minimum wage provision as they are "employees" within the scope and meaning of the NJWHL'S broad definitions. *Id.*

262.    N.J. Stat. Ann. § 34:11-56a4 exempts certain categories of employees from New York's minimum wage obligations; however, despite Defendants' misclassification of Plaintiff Davis and the New Jersey Class members as "independent contractors," none of the New Jersey's exemptions apply to them. *Id.*

263.    Pursuant to N.J. Stat. Ann. § 34:11-56a4(b)(1), employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. *Id.*

264.    Defendants violated N.J. Stat. Ann. § 34:11-56a4(b)(1) by failing to pay for overtime wages as required by the New Jersey minimum wage provision. *Id.*

265.    Plaintiff Davis and the New Jersey Class are victims of a uniform compensation policy.  On information and belief, the same unlawful compensation policy

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

has been applied to all New Jersey Class members.

266.    Plaintiff Davis and the New Jersey Class are entitled to damages equal to the amount of the unpaid overtime wages during the six years preceding the filing of the original Complaint in this matter, plus periods of equitable tolling.  N.J. Stat. Ann. § 34:11-56a25.

267.    Defendants are liable for a penalty in the amount of 200% of the total of the amount due from six years prior to the filing of the initial Complaint in this matter.  *Id.*

268.    Plaintiff Davis and the New Jersey Class are entitled to an award of reasonable attorneys' fees and costs incurred in pursuing this claim.  *Id.*

269.    Plaintiffs Davis and the New Jersey Class are entitled to an award of prejudgment and post-judgment interest at the applicable legal rate.  *Id.*

WHEREFORE, on Count IV of this Complaint, Plaintiff Davis on behalf of himself and the New Jersey Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) penalty damages pursuant to N.J. Stat. Ann. § 11-56a25; (3) attorneys' fees and costs as allowed by N.J. Stat. Ann. § 11-56a25; (4) prejudgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count V:  Violation Of The NJWHL By Failing**

**To Pay The New Jersey Minimum Wage**

**(On Behalf Of The New Jersey Class)**

270.    Plaintiffs reassert and re-allege the allegations set forth above.

271.    At all relevant times, Plaintiff Davis and the New Jersey Class have been entitled to the rights, protections, and benefits provided under N.J. Stat. Ann. § 34:11-56a.

272.    The NJWHL regulates, among other things, the payment of minimum wage by "employers" to "employees."  N.J. Stat. Ann. § 34:11-56a.

273.    Under the NJWHL, employees have been entitled to be compensated at a rate of at least $8.25 per hour in 2014, $8.38 per hour in 2015, $8.38 per hour in 2016, $8.44 per hour in 2017, $8.60 per hour in 2018, $10.00 per hour in 2019, and $11.00 per hour in 2020.  *Id.*

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

274.    The NJWHL also prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NJWHL.  N.J. Stat. Ann. § 34:11-4.4.

275.    Defendants are subject to the NJWHL as they are jointly and severally an "employer" within the scope and meaning of the NJWHL'S broad definitions.  N.J. Stat. Ann. § 34:11-56a1.

276.    Plaintiff Davis and the New Jersey Class are subject to the NJWHL as they are "employees" within the scope and meaning of the NJWHL broad definitions.  *Id.*

277.    Plaintiff Davis and the New Jersey Class are victims of a uniform compensation policy of compensating New Jersey Class members at wage rates below the New Jersey minimum wage; and that uniform policy, in violation of the NJWHL, has been applied, and continues to be applied, to all New Jersey Class members.

278.    As a result of the aforesaid violations of the NJWHL minimum wage provisions, Defendants have unlawfully denied Plaintiff Davis and the New Jersey Class minimum wages guaranteed under the NJWHL.

279.    Plaintiff Davis and the New Jersey Class are entitled to damages equal to the amount of the unpaid minimum wages during the six years preceding the filing of the original Complaint in this matter, plus periods of equitable tolling. N.J. Stat. Ann. § 34:11-56a25.

280.    Defendants are liable for a penalty in the amount of 200% of the total of the amount due from six years prior to the filing of the initial Complaint in this matter.  *Id.*

281.    Plaintiff Davis and the New Jersey Class are entitled to an award of reasonable attorneys' fees and costs incurred in pursuing this claim.  *Id.*

282.    Plaintiffs Davis and the New Jersey Class are entitled to an award of prejudgment and post-judgment interest at the applicable legal rate.  *Id*.

WHEREFORE, on Count V of this Complaint, Plaintiff Davis on behalf of himself and the New Jersey Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) penalty damages pursuant to N.J. Stat. Ann. § 11-56a25; (3)

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

attorneys' fees and costs as allowed by N.J. Stat. Ann. § 11-56a25; (4) prejudgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count VI:  Violation of the NYLL By Failing To Pay Overtime Wages
### (On Behalf Of The New York Class)

283.    Plaintiff Jaime reasserts and re-alleges the allegations set forth above.

284.    At all times material herein, Plaintiff Jaime and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the NYLL, §§ 190 *et seq.* and § 650 *et seq.*

285.    The NYLL regulates, among other things, the payment of overtime wages to employees.  NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2.

286.    Defendants are subject to the New York minimum wage provision as they constitute an "employer" within the scope and meaning of NYLL broad definitions.  NYLL §§ 190(3) & 651(6).

287.    Plaintiff Jaime and the New York Class are subject to the New York minimum wage provision as they are "employees" within the scope and meaning of the NYLL'S broad definitions.  NYLL §§ 651(5) & 190(2).

288.    The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Defendants' misclassification of Plaintiff Jaime and the New York Class members as "independent contractors," none of the New York's exemptions apply to them.  *Id*.

289.    Pursuant to the NYLL, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2.

290.    Defendants violated the NYLL by failing to pay for overtime wages as required by New York Law.  NYLL § 650 *et seq.*; 12 NYCRR § 142-2.2.

291.    Plaintiff Jaime and the New York Class are victims of a uniform

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

compensation policy.  On information and belief, the same unlawful compensation policy has been applied to all New York Class members.

292.    Plaintiff Jaime and the New York Class are entitled to damages equal to the amount of the unpaid overtime wages during the six years preceding the filing of the original Complaint in this matter, plus periods of equitable tolling.  NYLL § 663(1).

293.    Defendants are liable for a penalty in the amount of 100% of the total of the amount due as Defendants cannot prove a good faith basis to believe that their underpayments were in compliance with the law.  *Id.*

294.    Plaintiff Jaime and the New York Class are entitled to an award of reasonable attorneys' fees and costs incurred in pursuing this claim.  *Id.*

295.    Plaintiff Jaime and the New York Class are entitled to an award of prejudgment and post-judgment interest at the applicable legal rate.  *Id*.

WHEREFORE, on Count VI of this Complaint, Plaintiff Jaime on behalf of himself and the New York Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) statutory damages pursuant to NYLL § 663(1); (3) attorneys' fees and costs as allowed by NYLL § 663(1); (4) prejudgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count VII:  Violation Of The NYLL By Failing

### To Pay The New York Minimum Wage

### (On Behalf Of The New York Class)

296.    Plaintiffs reassert and re-allege the allegations set forth above.

297.    At all times material herein, Plaintiff Jaime and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the NYLL, §§ 190 *et seq.* and § 650 *et seq.*

298.    The NYLL regulates, among other things, the payment of minimum wage by "employers" to "employees."  NYLL § 652.

299.    Under the NYLL, employees have been entitled to be compensated at a rate of at least $8.00 per hour or more in 2014, $8.75 per hour or more in 2015, $9.00 per hour

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

or more in 2016, $9.70 per hour or more in 2017, $10.40 per hour or more in 2018, $11.10 per hour or more in 2019, and $11.80 per hour or more in 2020.[7]

300.    The NYLL also prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NYLL.  NYLL 198b(2).

301.    Defendants are subject to the NYLL as they are jointly and severally an "employer" within the scope and meaning of the NYLL'S broad definitions.  NYLL §§ 651(6) & 190(3).

302.    Plaintiff Jaime and the New York Class are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL broad definitions.  NYLL §§ 651(5) & 190(2).

303.    The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, despite Defendants' misclassification of Plaintiff Jaime and the New York Class as "independent contractors," none of the NYLL exemptions apply to them.  *Id*.

304.    Plaintiff Jaime and the New York Class are victims of a uniform compensation policy of compensating New York Class members at wage rates below the New York minimum wage; and that uniform policy, in violation of the NYLL, has been applied, and continues to be applied, to all New York Class members.

305.    As a result of the aforesaid violations of the NYLL minimum wage provisions, Defendants have unlawfully denied Plaintiff Jaime and the New York Class minimum wages guaranteed under the NYLL.

306.    Plaintiff Jaime and the New York Class are entitled to damages equal to the amount of the unpaid minimum wages during the six years preceding the filing of the original Complaint in this matter, plus periods of equitable tolling.  NYLL 663(1).

307.    Plaintiff Jaime and the New York Class are entitled to damages equal to the

---

[7] Higher minimum wage rates apply in certain areas of New York state. *See, e.g.,* https://www.labor. ny.gov/workerprotection/laborstandards/workprot/minwage.shtm.

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

amount of the unpaid overtime wages during the six years preceding the filing of the original Complaint in this matter, plus periods of equitable tolling. *Id.*

308.    Defendants are liable for a penalty in the amount of 100% of the total of the amount due as Defendants cannot prove a good faith basis to believe that their underpayments were in compliance with the law. *Id.*

309.    Plaintiff Jaime and the New York Class are entitled to an award of reasonable attorneys' fees and costs incurred in pursuing this claim. *Id.*

310.    Plaintiffs Jaime and the New York Class are entitled to an award of prejudgment and post-judgment interest at the applicable legal rate. *Id.*

WHEREFORE, on Count VII of this Complaint, Plaintiff Jaime on behalf of himself and the New York Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) statutory damages pursuant to NYLL § 663(1); (3) attorneys' fees and costs as allowed by NYLL § 663(1); (4) prejudgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count VIII:  Violation of the NYLL by Failing to Provide Wage Statements
### (On Behalf Of The New York Class)

311.    Plaintiff Jaime reasserts and re-alleges the allegations set forth above.

312.    At all relevant times, Plaintiff Jaime and all other New York Class members have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

313.    The NYLL regulates, among other things, provision of wage statements by "employers" to "employees." NYLL § 195(3).

314.    Defendants are subject to the NYLL as they are jointly and severally an "employer" within the scope and meaning of the NYLL's broad definition.  NYLL §§ 651(6) & 190(3).

315.    Plaintiff Jaime and all other New York Class members are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

definition.  NYLL §§ 651(5) & 190(2).

316.   The NYLL requires employers to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages" and further requires that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." NYLL § 195(3).

317.   Defendants have failed to provide Plaintiff Jaime and the New York Class with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked including overtime hours worked if applicable; deductions; and net wages.

318.   Through their failure to provide Plaintiff Jaime and all other New York Class members with the wage statements required by the NYLL, Defendants violated NYLL § 195(3).

319.   Due to Defendants' violations of NYLL § 195(3), Plaintiff Jaime and all other New York Class members are entitled to $250.00 each workday within the last six years that Defendants failed to provide them with accurate wage statements, or a total of $5,000.00 each.  NYLL § 198(1-d).

320.   Plaintiff Jaime is entitled to an award of their costs incurred in pursuing this claim.  *Id*.

321.    Plaintiff Jaime is entitled to an award of reasonable attorneys' fees incurred in pursuing this claim.  *Id.*

WHEREFORE, on Count VIII, Plaintiff Jaime, on behalf of himself and the New York Class, demand judgment against Defendants and request: (1) statutory damages pursuant to NYLL § 198(1-d); (2) attorneys' fees and costs as allowed by NYLL § 198(1-d); and (3) such other relief as the Court deems fair and equitable.

## Count IX:  Violation Of Materially Identical State Overtime Laws
## (On Behalf Of The Multi-State Overtime Class)

322.    Plaintiff Davis reasserts and re-alleges the allegations set forth above.

323.    Pursuant to the materially identical overtime laws of California, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington and the District of Columbia, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.

324.    Defendants violated at least the following materially identical statutes by failing to pay overtime wages as required:

a.      California Labor Code § 510;

b.      The Maryland Wage and Hour Law; Md. Lab. & Empl. Code §§ 3-415 & 3-420;

c.      The New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a *et seq.*;

d.      The New York Labor Law, NYLL §§ 650 *et seq.* and 12 NYCRR 142.2;

e.      The Ohio Minimum Fair Wage Standard Act, Ohio Rev. Code §§ 4111.03, *et seq.*;

f.      Oregon's overtime law, Or. Rev. Stat. § 653.261;

g.      The Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.*;

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

KERCSMAR & FELTUS PLLC

7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251

Tel. 480-421-1001| Fax. 480-421-1002

h.     The Washington Minimum Wage Act, RCW § 49.46.130(1); and

i.      The District of Columbia Minimum Wage Act, D.C. Code §§ 32-1003(c).

325.   Plaintiffs and members of the Multi-State Overtime Class are victims of a uniform compensation policy. On information and belief, the same unlawful compensation policy has been applied to all Defendants' delivery drivers misclassified as "independent contractors."

326.   No exemptions provided for in any of the materially identical overtime wage statutes apply to Plaintiffs or members of the Multi-State Minimum Wage Class.

327.   Plaintiffs and members of the Multi-State Overtime Class are entitled to damages equal to the mandated overtime premium pay accrued within the applicable limitations period, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for whether their conduct was prohibited by the materially identical state overtime laws.

328.   As a result of the aforesaid willful violations of the materially identical overtime statutes, Defendants are liable for liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count IX of this Complaint, Plaintiffs Davis and Jaime, on behalf of himself and the Multi-State Overtime Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count X:  Violation Of Materially Identical State Minimum Wage Laws By Failing To Pay Minimum Wage After Deducting Unreimbursed Vehicle Expenses**

**(On Behalf Of The Multi-State Minimum Wage Class)**

329.   Plaintiffs Gohn and Davis reassert and re-allege the allegations set forth above.

330.   Pursuant to the materially identical minimum wage laws of Arizona,

California, Florida, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington, Virginia and the District of Columbia, employees are entitled to be compensated at a rate of not less than the defined legal minimum set in each such state or territory.

331.    By failing to adequately reimburse Plaintiffs and members of the Multi-State Minimum Wage Class for the vehicle-related expense they incurred performing deliveries for Defendants, Defendants drove Plaintiffs' and members of the Multi-State Minimum Wage Class's wages below the applicable minimums provided for under the materially identical state minimum wage laws.

332.    Defendants violated at least the following materially identical statutes by failing to pay minimum wages as required:

      a.    The Arizona Employment Practices and Working Conditions Law, A.R.S. § 23-363;

      b.    California Labor Code § 1182.12, *et seq*.

      c.    The Florida Constitution, Fla. Const., Art. X § 24;

      e.    The Maryland Wage and Hour Law, Md. Lab. & Empl. Code § 3-413;

      f.    The New Jersey Wage and Hour Law, N.J.S.A. § 34:11–56a4 and N.J.A.C. §§ 12:56-3.1;

      g.    The New York Labor Law, NYLL § 652 and 12 NYCRR § 142-2.1;

      h.    The Ohio Minimum Fair Wage Standard Act, Ohio Rev. Code § 4111, *et seq*.;

      i.    Oregon's minimum wage law, Or. Rev. Stat. Ann. § 653.025;

      j.    The Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq*.;

      k.    The Washington Minimum Wage Act, Wash. Rev. Code Ann. § 49.46 *et seq*.;

      l.    The District of Columbia Minimum Wage Act, D.C. Code § 32-1003(a) & 32-1004; and

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

1        m.      Virginia Minimum Wage Law, Va. Code §§ 40.1-28.8, *et seq*.

2        333.    Plaintiffs and members of the Multi-State Minimum Wage Class are victims

3   of a uniform compensation policy.  On information and belief, the same unlawful

4   compensation policy has been applied to all Defendants' delivery drivers misclassified as

5   "independent contractors."

6        334.    No exemptions provided for in any of the materially identical minimum wage

7   statutes apply to Plaintiffs or members of the Multi-State Minimum Wage Class.

8        335.    Plaintiffs and members of the Multi-State Minimum Wage Class are entitled

9   to damages equal to the difference between the compensation received and the applicable

10  mandated state minimum wages because Defendants acted willfully and knew, or showed

11  reckless disregard for whether their conduct was prohibited by the materially identical state

12  minimum wage laws.

13       336.    As a result of the aforesaid willful violations of the materially identical

14  minimum wage statutes, Defendants are liable for liquidated damages, pre- and post-

15  judgment interest, reasonable attorneys' fees, and costs of this action.

16       WHEREFORE, on Count X of this Complaint, Plaintiffs, on behalf of themselves

17  and the Multi-State Minimum Wage Class, demand judgment against Defendants and

18  request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs;

19  (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief

20  as the Court deems fair and equitable.

21                   **Count XI:  Request for Declaratory Judgment**

22       337.    Plaintiffs Jaime, Gohn, and Davis reassert and re-allege the allegations set

23  forth above.

24       338.    An actual and immediate controversy exists between the parties concerning

25  whether Plaintiffs are required to arbitrate any dispute with Defendants arising out of their

26  contracts with Diligent.

27       339.    For the reasons alleged above, Plaintiffs and similarly situated delivery

28  drivers are exempt from arbitration under the FAA, 9 U.S.C. § 1 *et seq*., as they are

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

transportation workers "engaged in foreign or interstate commerce."

340.   Plaintiffs therefore seek a declaration that (a) Plaintiffs and similarly situated delivery drivers are exempt from arbitration under the FAA, 9 U.S.C. § 1 *et seq.*, as they are transportation workers "engaged in foreign or interstate commerce," (b) Defendants' arbitration demand is not valid against Plaintiffs and similarly situated delivery drivers, and (c) Plaintiffs are not required to arbitrate their disputes with Defendants.

WHEREFORE, on Count X of this Complaint, Plaintiffs, on behalf of themselves and Defendants' similarly situated delivery drivers request that the Court enter a declaratory judgment holding that (a) Plaintiffs and similarly situated delivery drivers are exempt from arbitration under the FAA, 9 U.S.C. § 1 *et seq.*, as they are transportation workers "engaged in foreign or interstate commerce" and, (b) Defendants' arbitration demand is not valid against Plaintiffs and similarly situated delivery drivers, and (c) Plaintiffs are not required to arbitrate their disputes with Defendants.  Plaintiffs further request an order granting them such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues triable by jury.

DATED this 5th day of January 2021.

By: */s/ Sean J. O'Hara*
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona  85251
Telephone: (480) 421-1001
Fax: (480) 421-1002
sjo@kflawaz.com

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001| Fax. 480-421-1002

Jeremiah Frei-Pearson
(*pro hac vice* forthcoming)
Bradley Silverman
(*pro hac vice* forthcoming)
Andrew White
(*pro hac vice* forthcoming)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
**bsilverman@fbfglaw.com**
awhite@fbfglaw.com

Mark Potashnick
(*pro hac vice* forthcoming)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

*Attorneys for Plaintiffs*

KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285, Scottsdale, AZ 85251
Tel. 480-421-1001 | Fax. 480-421-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28