Sean J. O'Hara (#024749)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
sjo@kflawaz.com
[additional lead counsel listed on the following page]

*Attorneys for Plaintiffs and the putative class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE STATE OF ARIZONA

| | |
|---|---|
| Hugo Jaime, Randall Gohn, and Robert Davis Jr., for themselves and all others similarly situated, | Case No. CV-21-00015-PHX-SPL |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE** |
| v. | |
| Parts Authority, LLC, Parts Authority, Inc., Yaron Rosenthal, Northeast Logistics, Inc. d/b/a Diligent Delivery Systems, Arizona Logistics, Inc. d/b/a Diligent Delivery Systems, BBB Logistics, Inc. d/b/a Diligent Delivery Systems, Michigan Logistics, Inc. d/b/a Diligent Delivery Systems, Larry Browne, Does 1-20 d/b/a Diligent Delivery Systems, and Does 21-40, | |
| Defendants. | |

Jeremiah Frei-Pearson (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
bsilverman@fbfglaw.com

Mark Potashnick (admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

*Attorneys for Plaintiffs*

1
2

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

RELEVANT FACTS AND PROCEDURAL HISTORY ..................................................... 2

ARGUMENT ......................................................................................................... 5

    I.      THE FIRST-TO-FILE RULE IS INAPPLICABLE. .................................... 5

    II.     A SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO PLAINTIFFS' CLAIMS OCCURRED IN THIS DISTRICT. ..... 7

    III.    THIS ACTION SHOULD NOT BE TRANSFERRED. ............................... 9

          A.    Defendants Have Not Satisfied Their Burden To Show That This Action Might Have Been Brought In Any Of The Proposed Transferee Courts. ....................... 9

          B.    Even If This Action Could Be Transferred, It Should Not. ............. 10

               1.    The Negotiation And Execution Of Contracts ...................... 10

               2.    The State That Is Most Familiar With The Governing Law. 11

               3.    The Plaintiff's Choice Of Forum Is Arizona. ...................... 11

               4.    The Respective Parties' Contacts With The Forum .............. 11

               5.    Contacts Relating To Plaintiffs' Cause Of Action In This Forum ............................................ 13

               6.    Differences In The Costs Of Litigation In The Two Forums 13

               7.    Compelling Attendance Of Unwilling Non-Party Witnesses 13

               8.    The Ease Of Access To Sources Of Proof ........................... 13

               9.    Arizona Has A Strong Public Policy Interest In Enforcing Its Own Wage And Hour Laws. ...................... 14

    IV.    THE FIRST AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING. ......................................................... 14

    V.     THIS COURT HAS JURISDICTION OVER THE DILIGENT ENTITIES. ......................................................... 15

    VI.    ALTERNATIVELY, THE COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY. ........................................... 17

CONCLUSION ..................................................................................................... 17

1

2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020).................................................................15

*Addington v. U.S. Airline Pilots Ass'n*,
  2010 WL 254451 (D. Ariz. Jan. 21, 2010).....................................................13

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991)............................................................................5

*Apolinar v. R.J. 49 REST., LLC*,
  2016 WL 2903278 (S.D.N.Y. May 18, 2016)................................................15

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020).................................................15

*Baca v. Johnson & Johnson*,
  2020 WL 6450294 (D. Ariz. Nov. 2, 2020)....................................................14

*Brice v. Plain Green, LLC*,
  372 F. Supp. 3d 955 (N.D. Cal. 2019)..............................................................5

*C.H. Robinson Co. v. Glob. Fresh*,
  2009 WL 10673422 (D. Ariz. Mar. 20, 2009)..................................................8

*Cavallaro v. UMass Meml. Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012)...............................................................................15

*Cedars-Sinai Med. Ctr. v. Shalala*,
  125 F.3d 765 (9th Cir. 1997)............................................................................5

*Chodock v. Am. Econ. Ins. Co.*,
  2005 WL 2994451 (D. Ariz. Nov. 7, 2005)......................................................9

*Daley v. See, Inc.*,
  2018 WL 5904143 (C.D. Cal. June 4, 2018)...................................................14

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)..........................................................................10

*Easton v. Wells Fargo & Co.*,
  2020 WL 3639934 (N.D. Cal. Jul. 6, 2020)....................................................14

*Fodera v. Equinox Holdings, Inc.*,
  2021 WL 1164799 (N.D. Cal. Mar. 26, 2021)..................................................5

*Gardner v. GC Services, LP*,
  2010 WL 2721271 (S.D. Cal. July 6, 2010)......................................................5

*Gherebi v. Bush*,
  352 F.3d 1278 (9th Cir. 2003)..........................................................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Gibbons v. PSCU Inc.*,
  2021 WL 308835 (D. Ariz. Jan. 29, 2021) ................................................................. 10

*Grubb v. BNSF Ry. Co.*,
  2020 WL 6136379 (D. Mont. May 26, 2020) .............................................................. 11

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ......................................................................................... 8

*Imran v. Vital Pharm., Inc.*,
  2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) ............................................................... 11

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) ....................................................................................... 9

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ....................................................................................... 10

*Joubert v. Lienhard*,
  2020 WL 1233938 (N.D. Cal. Mar. 13, 2020) ............................................................. 14

*LNV Corp. v. Venture Com. Mortg., LLC*,
  2010 WL 11431829 (D. Ariz. Aug. 24, 2010) ............................................................... 5

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ....................................................................................... 11

*Metz v. U.S. Life Ins. Co.*,
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) ........................................................................ 14

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
  723 F.3d 192 (2d Cir. 2013) ......................................................................................... 15

*Passantino v. Johnson & Johnson Cons. Prods.*,
  212 F.3d 493 (9th Cir. 2000) ......................................................................................... 8

*Perez v. DXC Tech. Services LLC*,
  2020 WL 1531363 (N.D. Cal. Mar. 31, 2020) ............................................................. 15

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ..................................................................................... 17

*Reyes v. Bakery Union & Indus. Int'l Pension Fund*,
  2015 WL 1738269 (N.D. Cal. Apr. 9, 2015) ............................................................... 11

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020) ......................................................................................... 6

*Rodriguez v. SGLC, Inc.*,
  2010 WL 2943128 (E.D. Cal. July 23, 2010) ............................................................... 15

*Scalia v. Arizona Logistics Inc.*,
  2020 WL 9597165 (D. Ariz. Mar. 24, 2020) ..........................................................*passim*

*Sillah v. Command Intl. Sec. Services*,
  2014 WL 5144540 (N.D. Cal. Oct. 13, 2014) ............................................................... 8

iii

*Smith v. US Investigations Services, Inc.*,
2004 WL 2663143 (D.D.C. Nov. 18, 2004) ................................................................ 9

*Taylor v. Shippers Transport Exp., Inc.*,
2014 WL 7499046 (C.D. Cal. Sept. 30, 2014) ........................................................ 16

*Texmo Oil Co. Jobbers Inc. v. Y Travel*,
2014 WL 2617248 (D. Ariz. June 12, 2014) .............................................................. 8

*Updateme Inc. v. Axel Springer SE*,
2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) ........................................................... 15

*Van Slyke v. Capital One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) ................................................................... 11

*Walsh v. Arizona Logistics, Inc.*,
2021 WL 1972613 (9th Cir. May 18, 2021) ............................................................... 4

*Wealth Rescue Strategies, Inc. v. Thompson*,
2008 WL 4447040 (D. Ariz. Oct. 1, 2008) ................................................................. 9

*Wilkie v. Gentiva Health Services, Inc.*,
2010 WL 3703060 (E.D. Cal. Sept. 16, 2010) ........................................................... 5

*Winters v. Quicken Loans Inc.*,
2021 WL 948767 (D. Ariz. Mar. 12, 2021) ............................................................... 6

*Wood v. Dunn*,
2010 WL 3259746 (W.D. Ky. Aug. 17, 2010) ........................................................... 9

*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995) ....................................................................................... 8

*Xcentric Ventures v. Borodkin*,
2012 WL 692976 (D. Ariz. Mar. 1, 2012) ................................................................. 7

**Statutes**

9 U.S.C. § 1 ............................................................................................................... 6

28 U.S.C. § 1391(b) ............................................................................................... 7, 9

28 U.S.C. § 1404(a) ............................................................................................... 9, 10

29 U.S.C. § 201 ......................................................................................................... 3

iv

1    Defendants Parts Authority, LLC and Parts Authority, Inc. (collectively, "Parts
2    Authority") deliver automotive parts to their customers.  Parts Authority's deliveries are
3    performed by delivery drivers staffed by commonly-controlled entities conducting business
4    as "Diligent Delivery Systems" or "Diligent," including Arizona Logistics, Inc. ("ALI"),
5    Northeast Logistics, Inc. ("NEL"), BBB Logistics, Inc. ("BBB"), and Michigan Logistics,
6    Inc. ("MLI") (collectively, the "Diligent Entities").  The Diligent Entities and Parts
7    Authority entered into a contract that contains provisions misclassifying the delivery drivers
8    working in Arizona as "independent contractors" and providing that Defendants will not
9    pay those Arizona delivery drivers either minimum wages or overtime wages.

10    Further perpetuating the misclassification scheme, Defendants make delivery drivers
11    sign contracts with one of the Diligent Entities that purport to establish an "independent
12    contractor" relationship.  After Diligent requires Plaintiffs to sign these contracts, Plaintiffs
13    and other drivers are made to drive their own vehicles to perform deliveries and to work
14    well over 40 hours a week for Parts Authority, without receipt of overtime and minimum
15    wages.  *See Scalia v. Arizona Logistics, Inc.*, Case No. 16-04499, ECF No. 203, Department
16    of Labor's ("DOL") Motion for Partial Summary Judgment (D. Ariz. Jul. 8, 2020)
17    ("[Diligent] paid their delivery drivers an average rate of $0.44 per hour[.]").

18    As set forth below in more detail, Parts Authority and the Diligent Entities have been
19    repeatedly sued for the same scheme, including the DOL's suit in this District.  *See Ariz.*
20    *Logistics*, Case No. 16-04499 (D. Ariz.); *Baten v. Michigan Logistics, Inc.,* Case No. 18-
21    10229 (C.D. Cal.); *Henao v. Parts Authority, LLC*, Case No. 19-10720 (S.D.N.Y.).  In two
22    of these matters, motions to dismiss were denied and those cases remain venued where the
23    named plaintiffs both worked and filed suit.  *See Ariz. Logistics*, Case No. 16-04499, ECF
24    No. 173 (D. Ariz. Mar. 24, 2020) (Order Denying Motion to Compel Arbitration or, in the
25    Alternative, to Dismiss or Stay Claims); *Baten*, Case No. 18-10229, ECF No. 29 (C.D. Cal.
26    Jan. 9, 2019) (Motion To Dismiss).[1]  There is no reason why the result in this case should

27    _____
28    [1] In addition, in response to a similar motion to dismiss filed in *Henao*, that court recently

1    be different.

2    <u>**RELEVANT FACTS AND PROCEDURAL HISTORY**</u>

3        Parts Authority was owned and controlled by Defendant Yaron Rosenthal.  First

4    Amended Complaint ("FAC") ¶ 36.  Defendant Larry Browne ("Browne") controls all

5    aspects of the Diligent Entities' business, including their operations in Arizona.  *Id.* ¶ 43.

6    The Diligent Entities operate as a single enterprise under Mr. Browne's control and share

7    common ownership and management, interrelated operations and common control of

8    drivers.  *Id.* ¶ 48.  These companies all operate from the same office in Houston, Texas.

9    *Id.* ¶¶ 39-43.

10       The Diligent Entities and Parts Authority entered into a Master Client Services

11   Agreement ("MCSA").  Declaration of Mark Potashnick ("Potashnick Decl.") Ex. 19,

12   105:5-17; Transcript of Deposition of Scott Bruder ("Bruder Tr."), Potashnick Decl. Ex. 24,

13   15:16-21, 23:17-24:3.  Per the MCSA, ALI provides delivery drivers to Parts Authority in

14   Arizona to deliver Parts Authority's products from its Arizona stores to its Arizona

15   customers.  MCSA, Potashnick Decl. Ex. 5, at Bates PA0399, ¶ 2 & PA0411, ¶ B.  Within

16   the MCSA, Parts Authority and Diligent established that they would classify all of those

17   delivery drivers as "independent contractors."  Potashnick Decl. Ex. 5, at Bates PA0401,

18   PA0413-15.  Paragraph 9 of the MCSA states:

19       The parties are, and intend to remain, independent Owner Operators
20   (Contractors) from each other and from the Owner Operator [Diligent
     delivery drivers].  The parties further acknowledge and agree that any Owner
21   Operator that agrees to perform services for Client shall be an Owner Operator
     with respect to both Client and DILIGENT.  No agency, employment, joint
22   venture, or partnership shall be created hereby or between these parties, and
     neither party thereto shall make any representation that would create the
23   appearance of such relationship.  DILIGENT shall clearly advise any Owner
     Operator it informs of an opportunity to provide services for Client that
24   DILIGENT, Client and Owner Operator are all independent operators with
     respect to each other and that no other relationship shall exist as between such
25   parties.

26   Potashnick Decl. Ex. 5, at Bates PA0401, ¶ 9.  The Diligent Entities and Parts Authority

27   later entered into an addendum to the  MCSA adding Defendant Arizona Logistics, Inc.

28   ordered the Defendants to produce jurisdictional discovery, followed by supplemental
     briefing by both sides.  *Henao,* No. 19-cv-10720, ECF No. 152 (S.D.N.Y. Apr. 6, 2021).

1  d/b/a "Diligent Arizona" as a party. *Id.* at Bates PA0411, ¶ B. That Addendum provides:

> Diligent warrants and represents that any parties supplied by Diligent who shall perform delivery services for Client under the Master Client Services Agreement are not employees of Diligent or of Client [Parts Authority] and that they are independent owner operators.  Should Client, its officers, directors, employees or assigns be the subject of any lawsuit or governmental inquiry or proceeding as a result of any claim brought by an individual, group or governmental agency challenging the status of an Owner Operator as an independent contractor and/or arising out of an alleged employer/employee relationship, then Diligent to the fullest extent permitted by law at it own cost and expense shall defend, indemnify and hold Client, it partners, affiliates subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents harmless from and against and all claims, losses, (including attorney's fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability and penalties). Such claims that shall be included in this addendum include by are not limited to claims arising as a result of services performed by Contractor for Client, including but not limited to claims brough under any federal, state or local statute, including but not limited to … Arizona Labor Laws, the Fair Labor Standards Act, as well as any other claim…

Potashnick Decl. Ex. 5, at Bates PA0413-14, ¶ 5.  In addition to an agreement between Defendants that the delivery drivers would be classified as "independent contractors," the quoted provision acknowledges an agreement between Parts Authority and Diligent that the Diligent delivery drivers working at Parts Authority would not receive minimum wage or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, or Arizona law. *Id.*  Mr. Rosenthal's contention that he has no idea how the Diligent delivery drivers are paid is directly contradicted by this provision. *Id.* at Bates PA0415, ¶ 7 (further agreement by Defendants to classify Arizona delivery drivers as "independent contractors").  The addendum specifically lists 10 Parts Authority stores in Arizona. *Id.* at Bates PA0416.

Defendants then made Plaintiffs and other drivers sign contracts incorporating the agreement amongst Defendants to classify the delivery drivers as "independent contractors" not subject to minimum wage and overtime pay rights. *See, e.g.*, Potashnick Decl. Ex. 1. Defendants' conduct resulted in systematic violations of the FLSA and AEPWCL.

Plaintiffs Randall Gohn, Bryan Bluder, Cynthia Cyprian, and Kelly White are Arizona residents that worked for Defendants in Arizona.  FAC ¶¶ 25, 28, 29, 31.  See Potasnick Decl. Ex. 25 (Declaration of Cynthia Cyprian).  Plaintiff Tyrone Young is a New

York resident that worked in New York. *Id.* ¶ 30. Plaintiff Robert Davis Jr. is a New Jersey resident that worked in New Jersey. *Id.* ¶ 26. Plaintiff Maurice Headd is a Georgia resident that worked in Georgia. *Id.* ¶ 27.[2]

As stated above, this is hardly the first time that Defendants have been accused of illegally misclassifying drivers as "independent contractors." In *Ariz. Logistics*, No. 16-04499 (D. Ariz), the DOL alleges that Diligent drivers working for Parts Authority are misclassified as "independent contractors" in violation of FLSA. After discovery revealed the extent of Mr. Browne's control over the Arizona Diligent operations, the DOL sought leave to add Mr. Browne as a named plaintiff and the court permitted additional jurisdictional discovery regarding Browne, which the court granted. *Ariz. Logistics*, No. 16-04499, ECF No. 121 (D. Ariz. Dec. 6, 2018), *id.* at ECF No. 139 (Mar. 4, 2019). Subsequently, Mr. Browne moved to dismiss for lack of jurisdiction. The court denied the motion, finding that Mr. "Browne availed himself of the privilege of doing business in Arizona and directed relevant activities here." *Ariz. Logistics Inc.*, 2020 WL 9597165, at *2 (D. Ariz. Mar. 24, 2020),[3] *aff'd sub nom., Walsh v. Arizona Logistics, Inc.*, 2021 WL 1972613 (9th Cir. May 18, 2021). Specifically, the court found evidence "that Browne negotiated and approved some client contracts (including contracts that cover most drivers in this case), directed deduction from drivers' pay, and was involved in key aspects of the [client] contract." *Id.* There was also evidence "that the FLSA wage and hour claims at issue arise out of or relate to these activities." *Id.*

In another action, *Baten v. Michigan Logistics, Inc.*, No. 18-10229 (C.D. Cal.), similar claims were alleged against Mr. Browne and various Diligent entities, including MLI. MLI did not dispute that court's jurisdiction. Mr. Browne did, but the court denied his motion. *Baten*, No. 18-10229, ECF No. 40 (C.D. Cal. Feb. 11, 2019) at 4-6.

---

[2] Plaintiff Hugo Jaime has settled his claims and will be removed as a named plaintiff.

[3] The same case is currently named *Acosta v. Arizona Logistics, Inc.* For ease of reference, it is cited as "*Ariz. Logistics.*"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.      THE FIRST-TO-FILE RULE IS INAPPLICABLE.**

There is no merit to Defendants' argument that this case should be dismissed under the "first-to-file rule."  Defendants falsely assert that identical claims are presently being litigated in an action pending in the Southern District of New York entitled, *Henao, et al. v. Parts Authority, LLC, et al.*, No. 19-10720 (S.D.N.Y.).  All Defendants in this action are also defendants in *Henao*.  Therefore, they should know the substance of the claims asserted in that action.  Yet, Defendants fail to disclose that claims in *Henao* and in the present action are materially different.

"Under [the first-to-file] rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).  "Even where the rule would otherwise apply, the court may decline to invoke the rule 'for reasons of equity.'" *LNV Corp. v. Venture Com. Mortg., LLC*, 2010 WL 11431829, at *5 (D. Ariz. Aug. 24, 2010) (quoting *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 622, 628 (9th Cir. 1991)).  "In analyzing class actions, most courts approach this factor by comparing the classes, not their representatives, even when certification has not yet taken place." *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 974 (N.D. Cal. 2019) (declining to apply first-to-file rule where the proposed classes in the two cases did not substantially overlap).  Where there is no significant overlap of proposed classes, the first-to-file rule should not be applied. *See, e.g.*, *Fodera v. Equinox Holdings, Inc*., 2021 WL 1164799, at *7 (N.D. Cal. Mar. 26, 2021) (finding first-to-file rule inapplicable where "there is only minor overlap of the putative plaintiff classes"); *Gardner v. GC Services, LP*, 2010 WL 2721271, at *5 (S.D. Cal. July 6, 2010) (declining to apply the first-to-file rule where, although there was a common defendant, the named plaintiffs were different and the proposed classes did not overlap); *Wilkie v. Gentiva Health Services, Inc.*, 2010 WL 3703060, at *5 (E.D. Cal. Sept. 16, 2010) (declining to apply the first-to-file rule where the proposed classes did not overlap); *see also*

1
2
*Winters v. Quicken Loans Inc*., 2021 WL 948767, at *4 (D. Ariz. Mar. 12, 2021) (granting leave to amend complaint to allege "a non-overlapping class").

3
4
5
6
7
8
9
10
11
12
13
The proposed collective and classes in *Henao* are expressly limited to drivers *without* arbitration agreements.  *See Henao*, No. 19-10720, ECF No. 71 (S.D.N.Y. Jan. 29, 2020) (so ordered stipulation clarifying that proposed collective and classes in *Henao* are limited to drivers *without* arbitration agreements and that claims of any employees with arbitration agreements are withdrawn).  In contrast, in the present action, the proposed collective and classes are specifically limited to drivers "for whom Defendants possess a signed independent contractor agreement."  *See* FAC ¶¶ 185, 189, 200, 211, 222.   These independent contractor agreements are standard forms that contain an arbitration agreement. *See, e.g.*,  Potashnick Decl. Ex. 1 (form Diligent contracts filed as ECF No. 15-3 Exs. A-B).  For these reasons, the proposed collectives and classes in the present action and in *Henao* do not overlap.

14
15
16
17
18
19
20
21
22
23
Because the proposed classes in *Henao* do not overlap with the those in the present action, the first-to-file rule is inapplicable.  Moreover, there are other material distinctions between the issues in the two cases.  In the present case, because the named plaintiffs and putative collective and class members have signed arbitration agreements, as a threshold issue they must prove that their arbitration agreements are unenforceable under the Federal Arbitration Act ("FAA") because they comprise a "class of workers engaged in foreign or interstate commerce" within the scope and meaning of Section 1 of the FAA, 9 U.S.C. § 1. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 2021 WL 666403 (U.S. Feb. 22, 2021) (finding last mile delivery drivers are exempt under the FAA). This central issue in the present case is not an issue in *Henao*.

24
25
26
27
Further, the Diligent Defendants cannot argue that the first-to-file should be applied to transfer Plaintiffs' claims to the Southern District of New York where, in *Henao*, the Diligent Defendants continue to argue that that Court has no jurisdiction over them.  *See Henao*, Case No. 19-cv-10720, ECF No. 133 at 12-19 (S.D.N.Y. Dec. 21, 2020).

28
Defendants also make a brief three-sentence alternative argument that Plaintiffs'

claims should be severed, and that the non-Arizona plaintiffs' claims should be transferred to the Southern District of New York, while the Arizona plaintiffs' claims are stayed pending the outcome of *Ariz. Logistics*.  Defendants provide no authority for this position. It is not clear whether Defendants are asserting that the Arizona's plaintiffs' claim should be stayed under the first-to-file rule.  Nor do they explain why the rule would be applicable. *Ariz. Logistics* and the present action have different plaintiffs and only two of the Defendants in the present action (ALI and Mr. Browne) are defendants in *Ariz. Logistics*. Nor is there overlap of claims between this case and *Ariz. Logistics.*

## II.     A SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO PLAINTIFFS' CLAIMS OCCURRED IN THIS DISTRICT.

Venue is proper in this District.  28 U.S.C. § 1391(b) provides that:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

A substantial part of the events or omissions giving rise to the claims alleged by Plaintiffs occurred in Arizona.  Four of the named plaintiffs (Randall Gohn, Bryan Bluder, Cynthia Cyprian, and Kelly White) are Arizona residents who worked for Defendants in Arizona and were paid wages below the minimum wage for work performed in Arizona. *See* FAC ¶¶  25, 28, 29, 31, 36, 146-48, 256-277.

Yet, Defendants argue that a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in Arizona.  "[F]or venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, *even if other material events occurred elsewhere*." *Xcentric Ventures v. Borodkin*, 2012 WL 692976, at *7 (D. Ariz. Mar. 1, 2012) (emphasis in the original) (quoting *Gulf*

1   *Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005)).  "Substantial" does not mean

2   the "majority of," or even the "most" events giving rise to the claims.  *See Texmo Oil Co.*

3   *Jobbers Inc. v. Y Travel*, 2014 WL 2617248, at *2 (D. Ariz. June 12, 2014) (holding that

4   venue may be proper where fewer significant events occurred in the state in which an action

5   is filed than in other states).  "The [venue] statute does not mandate a single appropriate

6   district for venue; rather, 'venue may be proper in any of a number of districts,' so long as

7   the district meets the requirements of the statute."  *C.H. Robinson Co. v. Glob. Fresh*, 2009

8   WL 10673422, at *7 (D. Ariz. Mar. 20, 2009) (quoting *Woodke v. Dahm*, 70 F.3d 983, 985

9   (8th Cir. 1995)).  "A district court need not 'determine the best venue,' merely a proper

10  venue."  *Id.* (quoting *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003)).

11          Defendants point to certain events occurring in Texas, but that does not mean that a

12  substantial part of the relevant events or omissions did not occur in Arizona.  To that end,

13  the events to which Defendants point are more tangential to the alleged claims.  They note

14  that the Plaintiffs' contracts "were made in Texas."  ECF No. 15 at 8.  However, while the

15  Diligent Entities may have been located in Texas, the majority of the Plaintiffs were located

16  in Arizona.  For that reason, contracts were also "made" in Arizona.[4]  Defendant also notes

17  that payroll functions were operated out of offices in Texas.  However, Plaintiffs lived and

18  worked in Arizona, were harmed in Arizona, and assert claims under Arizona wage and

19  hour laws.[5]  That is more than sufficient for venue to be proper in this District.  *See, e.g.,*

20  *Passantino v. Johnson & Johnson Cons. Prods.*, 212 F.3d 493, 504-05 (9th Cir. 2000)

21  (finding venue proper in district where employee lived and worked); *Sillah v. Command*

22  *Intl. Sec. Services*, 2014 WL 5144540, at *3 (N.D. Cal. Oct. 13, 2014) (finding venue proper

23  in district where employee worked in action alleging minimum wage violations and other

24  state employment claims).[6]

25  ───────────────

26  [4] *See* Declaration of Plaintiff Cynthia Cyprian (Potashnick Decl. Ex. 25) ¶ 4 (stating that
    she executed the document in Arizona).

27  [5] *Id.* ¶¶ 4-5.

28  [6] Cases cited by Defendants are readily distinguishable.  *In Smith v. US Investigations*
    *Services, Inc.*, 2004 WL 2663143, at *3 (D.D.C. Nov. 18, 2004), venue was found improper,

8

1

## III.    THIS ACTION SHOULD NOT BE TRANSFERRED.

2

3
### A.    Defendants Have Not Satisfied Their Burden To Show That This Action Might Have Been Brought In Any Of The Proposed Transferee Courts.

4       28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses,

5   in the interest of justice, a district court may transfer any civil action to any other district or

6   division *where it might have been brought* or to any district or division to which all parties

7   have consented" (emphasis added).  "The moving party must demonstrate that the proposed

8   transferee court would have subject matter jurisdiction, personal jurisdiction, and would be

9   a proper venue for the action."  *Chodock v. Am. Econ. Ins. Co*., 2005 WL 2994451, at *2

10  (D. Ariz. Nov. 7, 2005).[7]

11      Defendants have not satisfied this burden.  They seek to transfer this action to the

12  Southern District of New York or the Southern District of Texas.  But in *Henao*, some

13  Defendants openly assert that the Southern District of New York has no jurisdiction over

14  them.  *See Henao*, No. 19-10720, ECF No. 133 at 12-19 (S.D.N.Y. Dec. 21, 2020)

15  (memorandum in support of motion to dismiss claims in the third amended complaint due

16  to lack of jurisdiction over the Defendants).  Defendants also do not assert that all

17  Defendants (including Parts Authority and Rosenthal) are subject to the jurisdiction of the

18  Southern District of Texas.   For these reasons, this action may not be transferred.

19

20   ─────────────────

21   not merely because the processing of payments occurred in Virginia, but because the plaintiff lived and worked in Virginia, the target of transfer.  In *Wood v. Dunn*, 2010 WL 3259746, at *2 (W.D. Ky. Aug. 17, 2010), the plaintiff brought the action in a district other

22   than the one in which he worked and no party argued that the location of his job was a basis for venue.  In *Wealth Rescue Strategies, Inc. v. Thompson*, 2008 WL 4447040, at *2 (D.

23   Ariz. Oct. 1, 2008), where all alleged unlawful conduct by the defendants occurred in Texas, but plaintiffs asserted that venue was proper because a non-party that administered accounts

24   at issue was located in Arizona and because a plaintiff made one trip to Arizona in the course of negotiating a contract, the court found such facts "only marginally related to the

25   claims in this case."   Moreover, language quoted by Defendants from *Wealth Rescue Strategies* is just *dicta*.  *Id*. at *1.

26

27   [7] Moreover, Defendants cannot use the first-to-file rule to circumvent the requirements for transfer and venue in 28 U.S.C. §§ 1391 and 1404.  *See In re Bozic*, 888 F.3d 1048, 1054

28   (9th Cir. 2018) ("Defendants also contend that the first-to-file rule negates § 1404(a)'s requirement that an action may be transferred only to a district where it 'might have been brought.' We disagree.").

**B.**     **Even If This Action Could Be Transferred, It Should Not Be Transferred.**

As set forth above, the first-to-file is inapplicable and this action cannot be transferred.   Nevertheless, even if this action could be transferred, it should not be transferred.  Defendants "as the moving party, bear[] the burden of demonstrating transfer is appropriate, and 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'"  *Gibbons v. PSCU Inc*., 2021 WL 308835, at \*1 (D. Ariz. Jan. 29, 2021) (quoting *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986)).   The following factors are considered on a motion to transfer:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th Cir. 2000).  Additionally, "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id*.  These factors weigh against any transfer.

### 1.     The Negotiation And Execution Of Contracts

At the merits stage, Defendants will argue that the drivers "negotiate" contracts stating the drivers are independent contractors at the time and place where the contracts are signed.  *Accord* Potashnick Decl. Ex. 16 (Lucio Trans.), 33:15-25 ("Q. If you look at the second bullet point, you see the number $2,300 written in. Who wrote in that amount?  A. I did.  Q. Where did that amount come from? A. Fred [Diligent's recruiter] told me to write it down.   Q. Did you ever negotiate that amount? A. No.   Q. Did you ever have the opportunity to negotiate that amount?  A. No.").  While Defendants assert that they signed contracts in Texas, Plaintiffs received and executed the contracts in their home states and half of the Plaintiffs live and work in Arizona. *See, e.g.*, Potashnick Decl. Ex. 25 (Cyprian declaration) ¶¶ 4-5.  Therefore, this factor is neutral.[8]

---

[8] *See, e.g.*, *Grubb v. BNSF Ry. Co.,* 2020 WL 6136379, \*7 (D. Mont. May 26, 2020) (rejecting employer's argument that the plaintiffs' documents were administered and maintained in Texas because "most of the relevant documents were sent back and forth

### 2.     The State That Is Most Familiar With The Governing Law.

The majority of the Plaintiffs (Gohn, Bluder, Cyprian, and White) assert claims under Arizona state law.  One Plaintiff (Young) asserts claims under New York state law. No Plaintiffs assert claims under Texas state laws.  This factor favors keeping this action in Arizona.  Defendant does not dispute that this factor does not favor transfer to Texas.

### 3.     The Plaintiff's Choice Of Forum Is Arizona.

Plaintiffs chose to bring this action in Arizona.  That choice is afforded some weight, particularly where this action has been brought in the home state of a majority of the Plaintiffs.  "When, as here, 'an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.'"  *Imran v. Vital Pharm., Inc.*, 2019 WL 1509180, at *3 (N.D. Cal. Apr. 5, 2019) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).  "Nevertheless, because the named plaintiff resides in [this district] and some of the operative events occurred in this district, [plaintiff's] 'choice of forum is [still] entitled to deference, even though this factor is accorded less weight in a class action context.'"  *Id*. (quoting *Reyes v. Bakery Union & Indus. Int'l Pension Fund*, 2015 WL 1738269, at *3 (N.D. Cal. Apr. 9, 2015).  Moreover, "'even if a nationwide class were certified,' [the plaintiff] 'would still bear a fiduciary responsibility to lead the class.'"  *Id*. (quoting *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D. Cal. 2007)). Accordingly, this factor favors keeping this action in Arizona.[9]

### 4.     The Respective Parties' Contacts With The Forum

The majority of the Plaintiffs live and work in Arizona.  Their claims arise out of their employment in Arizona.  One Plaintiff lives and works in New York.  None of the Plaintiffs live in, work in, or have relevant contacts with Texas.

---

between Montana, Texas and Kansas" and therefore "the location of where the relevant agreements were negotiated and executed "neither favors nor disfavors transfer"), report & recommendation adopted at 2020 WL 5056578 (D. Mont. Aug. 27, 2020).

[9] Defendants speculate that Plaintiffs have engaged in forum shopping "because [Plaintiffs] perceive this venue as hostile to arbitration."  ECF No. 15 at 11.  Defendants cite no factual support for this proposition.  Yet, they insist that "there is simply no other explanation."  *Id*. at 12.  The fact that Plaintiffs live and work in Arizona is certainly another explanation, as is the fact that this District is familiar with these matters due to the *Acosta* litigation.

Parts Authority does not dispute that it operates in Arizona and that the majority of Plaintiffs performed work for their benefit in Arizona.  They also do not dispute that this Court has specific jurisdiction over them with respect to Plaintiffs' claims.  Rosenthal, who owns and operates the Parts Authority entities is alleged to be a joint employer and part of a single enterprise that controlled all aspect of drivers' employment, including those Plaintiffs and putative class members in Arizona.[10]

ALI conducts business in Arizona and is, nominally, the entity that contracted with the Arizona Plaintiffs to perform the work at issue.  It, too, does not dispute that this Court has specific jurisdiction over them with respect to Plaintiffs' claims.  As set forth below, the other Diligent Entities (together with Browne) are merely parts of the same singular enterprise as ALI and should be treated as an extension of ALI for purposes of jurisdiction and venue.  *See* § V, *infra*.  To that end, Mr. Browne who operates all the Diligent entities, has already been found to have contacts with Arizona sufficient for him to be subject to jurisdiction in this District based on the misclassification of drivers.  The *Ariz. Logistics* court found that there is evidence "Browne availed himself of the privilege of doing business in Arizona and directed relevant activities here."  *Ariz. Logistics Inc.*, 2020 WL 9597165, at \*2 (D. Ariz. Mar. 24, 2020), *aff'd sub nom.*, *Walsh v. Arizona Logistics, Inc.*, 2021 WL 1972613 (9th Cir. May 18, 2021).  Specifically, the court found evidence "that Browne negotiated and approved some client contracts (including contracts that cover most drivers in this case), directed deduction from drivers' pay, and was involved in key aspects of the [client] contract."  *Id.*  There was also evidence "that the FLSA wage and hour claims at issue arise out of or relate to these activities."  *Id.*[11]  All these contacts with this forum show that this factor favors keeping this action in Arizona.

---

[10] Plaintiffs' opposition to the separate motion of Mr. Rosenthal to dismiss this action sets out in greater detail his contacts with Arizona and why he is subject to this Court's jurisdiction.

[11] Plaintiffs' opposition to the separate motion of Mr. Browne to dismiss this action sets out in greater detail his contacts with Arizona and why he is subject to this Court's jurisdiction.

### 5.      Contacts Relating To Plaintiffs' Cause Of Action In This Forum

The same contacts with the forum discussed above, including Defendants entering into contracts between themselves for work to be performed by "independent contractors" in Arizona, constitute the specific contacts with Arizona giving rise to Plaintiffs' claims. Thus, this factor heavily favors keeping this action in Arizona.

### 6.      Differences In The Costs Of Litigation In The Two Forums

Plaintiffs are delivery drivers who were being paid less than minimum wage. At the same time, Defendants are highly successful businesses and businessmen that have far greater resources than Plaintiffs. Therefore, Plaintiffs are more likely to be burdened by litigating in a remote location. *See Addington v. U.S. Airline Pilots Ass'n*, 2010 WL 254451, at *2 (D. Ariz. Jan. 21, 2010) (where individual plaintiffs live in the forum, action should not be transferred to reduce defendants' costs at the expense of plaintiffs). Indeed, none of the Plaintiffs have contacts with Texas and only one has contacts with New York, while four live and work in Arizona. Moreover, the Diligent entities and Mr. Browne are already litigated similar issues in this District in *Ariz. Logistics*. Therefore, litigating this case in the same District would be more efficient than litigating on yet another front in Texas (in addition to Arizona (*Ariz. Logistics*), New York (*Henao*), and California (*Baten*)). This factor, too, weighs in favor of keeping this case in Arizona.

### 7.      Compelling Attendance Of Unwilling Non-Party Witnesses

Plaintiffs are unaware of any specific non-party witnesses whose attendance at deposition or trial may need to be compelled. Therefore, this factor is neutral.

### 8.      The Ease Of Access To Sources Of Proof

Defendants emphasize that the Diligent Entities' records are in Texas and Parts Authority's records are in New York. However, in 2021, "'ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.'" *Daley v. See, Inc.*, No. 18461, 2018 WL 5904143, at *5 (C.D. Cal. June 4, 2018) (quoting *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009)). Further, as a result of the Covid

13

pandemic, remote video depositions have also become commonplace, thus easing burdens of deposing out-of-state witnesses. Moreover, related litigation is already ongoing in Arizona and Plaintiffs are happy to work with Defendants to ease any potentially burdens. For these reasons, there are no significant concerns regarding access to sources of proof.

### 9. Arizona Has A Strong Public Policy Interest In Enforcing Its Own Wage And Hour Laws.

Plaintiffs allege claims under Arizona state law.  Arizona certainly has a strong public policy interest in protecting the rights of workers within the state and to enforce its own employment laws.  *See, e.g.*, *Easton v. Wells Fargo & Co.*, 2020 WL 3639934, at *5 (N.D. Cal. Jul. 6, 2020) (recognizing that "the district where the named plaintiff worked has the14reatestt local interest."); *Joubert v. Lienhard*, 2020 WL 1233938, at *6 (N.D. Cal. Mar. 13, 2020) ("Courts have found that a state has local interest in resolving disputes arising out of a citizen's employment.").  At the same time, no Texas state claims are alleged and Texas has no overriding public policy interests that would justify transfer to Texas. This factor also weighs in favor of denying transfer.

Ultimately, these factors weigh in favor of keeping the case in Arizona.  Defendants certainly have not made the requisite "strong showing" of a need to transfer the case.

## IV.   THE FIRST AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING.

Unable to have this action dismissed or transferred on any other basis, Defendants resort to labeling the FAC as a "shotgun pleading."  It is not.  It adequately places Defendants on notice of the claims against them.  Thus, the FAC may not be dismissed on this basis. *See, e.g.*, *Baca v. Johnson & Johnson*, 2020 WL 6450294, at *2 (D. Ariz. Nov. 2, 2020) (denying motion).  To that end, any concerns about the pleadings "can be resolved through case management conferences and discovery motions." *B.M. v. Wyndham Hotels & Resorts, Inc*., 2020 WL 4368214, at *8 (N.D. Cal. July 30, 2020).

While Defendants complain that each of them is alleged to be liable for all alleged acts, the FAC alleges that all Defendants operate as a single enterprise and as a joint employer.  FAC ¶¶ 39-50.  Thus, all Defendants are liable for the actions of the others.

14

1   Given the nature of these allegations and the need for discovery on these issues, the FAC is

2   adequate. *B.M.*, 2020 WL 4368214, at *6 (finding complaint adequately alleged that

3   defendants were joint employers); *see also Updateme Inc. v. Axel Springer SE*, 2018 WL

4   1184797, at *5 (N.D. Cal. Mar. 7, 2018) (where plaintiffs alleged a single enterprise theory,

5   the complaint was not a shotgun pleading); *Rodriguez v. SGLC, Inc*., 2010 WL 2943128, at

6   *4-5 (E.D. Cal. July 23, 2010) (where plaintiffs alleged a joint employer theory, the

7   complaint was not a shotgun pleading).[12]

8   **V.      THIS COURT HAS JURISDICTION OVER THE DILIGENT ENTITIES.**

9       Plaintiffs allege that the Diligent Entities are a united single enterprise.  FAC ¶¶ 39-

10  50. "Courts consider the following factors to determine if a single enterprise exists:

11  (1) interrelation of operations; (2) common management; (3) common control of labor

12  relations; and (4) common ownership or financial control[.]" *Taylor v. Shippers Transport

13  Exp., Inc.*, 2014 WL 7499046, at *18 (C.D. Cal. Sept. 30, 2014).

14      The Diligent entities collectively advertise their services as a single integrated

15  enterprise on Diligent's website at www.diligentusa.com.  FAC ¶ 45.  Diligent further

16  boasts of  "a nationwide network of more than 3,800 driver associates" that "complete

17  thousands of local, regional and nationwide deliveries daily." *See* http://diligentusa.

---

[12] The cases cited by Defendants are readily distinguishable. In *Nakahata v. New York-Presbyterian Healthcare System, Inc*., 723 F.3d 192, 201 (2d Cir. 2013) and *Cavallaro v. UMass Meml. Healthcare, Inc.*, 678 F.3d 1, 10 (1st Cir. 2012), the plaintiffs failed to allege their direct employer. However, here, Defendants are well-aware of the Defendants with which the Plaintiffs nominally contracted.  For example, Defendants acknowledge that Bluder and White contracted with ALI (ECF No. 31 at 3-4 n.2), and Davis and Jaime contracted with NEL (ECF No. 15-3 ¶¶ 5-6).  In *Perez v. DXC Tech. Services LLC*, 2020 WL 1531363, at *4 (N.D. Cal. Mar. 31, 2020), there was no explanation of the relationships of the alleged joint employers.  That is not the case here.  *See* FAC ¶¶ 39-50. In *A.B. v. Hilton Worldwide Holdings Inc*., 484 F. Supp. 3d 921, 938, 944 (D. Or. 2020), the court did not reach the issue of whether the complaint constituted a shotgun pleading.  In *Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016), the court found that the plaintiff had failed to allege "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer."  That is not the case with respect to the Defendants in the present case.  Indeed, two other courts have already found that, through his domination and control as a common owner and operator, Mr. Browne may be held liable for operating the Diligent entities as a single enterprise.  *See Scalia v. Arizona Logistics Inc.*, 2020 WL 9597165, at *2 (D. Ariz. Mar. 24, 2020), *aff'd sub nom., Walsh v. Arizona Logistics, Inc.*, 2021 WL 1972613 (9th Cir. May 18, 2021); *Baten v. Michigan Logistics, Inc*., Case No. 18-cv-10229, ECF No. 40 (C.D. Cal. Feb. 11, 2019) at 4-6.

1   Wpengine.com/about/.  The entities are all owned and operated by Browne out of a single

2   common address.  FAC ¶¶ 39-50.  Further, in *Ariz. Logistics*, it was admitted that "Diligent

3   Delivery Systems ('Diligent National') currently operates as a 'national delivery service'

4   of 20 entities, of which Arizona Logistics ('Diligent') is one."  *Ariz. Logistics*, ECF Nos.

5   204, 227.

6        Additionally, in *Henao*, after the court ordered the parties to conduct jurisdictional

7   discovery, further evidence of this single enterprise came to light.  With respect to the

8   interrelation of operations, Norlyn Enterprises, Inc. ("Norlyn"), a related entity with the

9   same address, provides "accounting, billing, collection, finance, human resources,

10  information technology, independent contractor resources, legal, marketing and sales"

11  services for all of the Diligent Entities.  Potashnick Decl. Exs. 2-3, Ans. To Int. # 8;

12  Potashnick Decl. Ex. 4, 15:16-21, 37:11-19, 38:18-21.  Further, NEL and ALI entered into

13  the same Master Services Agreement with the Parts Authority defendants.   Potashnick

14  Decl. Ex. 5; Potashnick Decl. Ex. 4, 15:16-21, 23:17-24:3.  That Master Service

15  Agreement established a "Driver Code of Conduct."  See Potashnick Decl. Ex. 5, at Bates

16  PA0404-05.   The Diligent entities also share a common bank account.  Potashnick Decl.

17  Ex. 4, 43:12-24.

18       With respect to common management, Browne is the sole director of all of the

19  Diligent Entities.  Potashnick Decl. Ex. 6, Ans. to Int. # 5; Potashnick Decl. Exs. 2 and 3,

20  Ans. to Int. # 2; Potashnick Decl. Ex. 7; Potashnick Decl. Ex. 8, Articles 7.   They also share

21  the same executives.  Potashnick Decl. Exs. 2-3, Ans. to Int. # 5.

22       With respect common control of labor relations, Norlyn also handles all human

23  resources and accounting for the Diligent entities and maintains their work and payroll

24  records.  Potashnick Decl. Ex. 4, 7:17-25, 15:16-21, 19:7-19, 20:10-21:9, 37:11-19, 38:18-

25  21.   Indeed, all driver contracts are standard forms on "Diligent Delivery Systems"

26  letterhead and Norlyn owns the copyright for the form.  Potashnick Decl. Ex. 1.

27       Finally, with respect to common ownership and control, Browne is the sole owner

28  of each of the Diligent Entities.  Potashnick Decl. Ex. 6, Ans. to Int. # 3; Potashnick Decl.

Exs. 2-3, Ans. to Int. # 2.  Under such circumstances, it is perfectly reasonable to find these entities, which act as one, to be subject to this Court's jurisdiction, where it is undisputed that this Court has jurisdiction over ALI.  *See, e.g.*, *Ariz. Logistics Inc.*, 2020 WL 9597165, at *2 (D. Ariz. Mar. 24, 2020), *aff'd sub nom.*, *Walsh v. Arizona Logistics, Inc.*, 2021 WL 1972613 (9th Cir. May 18, 2021) (finding jurisdiction over Browne); *Baten v. Michigan Logistics, Inc.*, No. 18-10229, ECF No. 40 (C.D. Cal. Feb. 11, 2019) at 4-6 (same).[13]  *See also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) ("We hold the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.")

## VI.   ALTERNATIVELY, THE COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY.

In both *Ariz. Logistics* and *Henao*, the Court permitted jurisdictional discovery with respect to the same Defendants and issues.  *Ariz. Logistics*, No. 16-04499, ECF No. 121 (D. Ariz. Dec. 6, 2018); *Henao*, No. 19-10720, ECF No. 152.  Similarly, in *Baten*, the court denied Browne's motion to dismiss where plaintiff relied upon discovery from the *Ariz. Logistics* action.  *Baten*, No. 18-10229, ECF No. 40 at 4-6.  Should the court find questions regarding whether it has jurisdiction over any Defendant, Plaintiffs respectfully request that the Court permit the parties to conduct limited jurisdictional discovery.

## CONCLUSION

For all the aforementioned reasons, Plaintiffs respectfully that this motion be denied in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: June 1, 2021

*Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900

---

[13] Notably, in *Baten*, individual Diligent entities, including MLI, did not dispute the court's jurisdiction over them.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
bsilverman@fbfglaw.com

Mark Potashnick (admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

Sean J. O'Hara (#024749)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
sjo@kflawaz.com

*Attorneys for Plaintiffs*